[No. B012454. Second Dist., Div. Two. Nov. 3, 1986.]

JESUS RODRIGUEZ, Plaintiff and Respondent, v.
SAMUEL KLINE, Defendant and Appellant.

**COUNSEL**

Roper & Folino, Domenic Folino, Joseph L. Stark and Irving Glovin for Defendant and Appellant.

Richard M. Foster for Plaintiff and Respondent.

**OPINION**

**GATES, J.**—Defendant Samuel Kline appeals from the judgment awarding Jesus Rodriguez $99,000 for damages sustained in a traffic accident on October 23, 1979.

We are called upon to decide whether a person who is within this country illegally is entitled to be compensated for his personal injuries based upon his projected earning capacity in (1) the United States, or (2) the country of his lawful citizenship. We must further determine which of the parties carries the burden on this issue and whether it presents a question for the trial court or for the jury. So far as we have been able to discover, no prior decision in this state, or elsewhere, has provided any significant guidelines.

 When an individual enters this country in violation of our immigration laws, as respondent candidly conceded he did,[1] he is subject to deportation.

---

[1] The following questions were asked and responses given during respondent's direct examination: "Q. Mr. Rodriguez, are you a citizen of the United States? A. No. Q. Do you have what they refer to as a Green Card? A. No. Q. That means you're an illegal alien? A. Yes."

(8 U.S.C. § 1251.) As a consequence, respondent's status unquestionably bore upon the amount of his anticipated future earnings. That is to say, if respondent were to return, voluntarily or involuntarily, to Mexico, the income he could expect to receive there would be markedly less than a figure derived from his earnings during his sojourn here. To date the California courts that have considered this proposition at all have recognized its soundness.

Our own decision in *Metalworking Machinery, Inc.* v. *Superior Court* (1977) 69 Cal.App.3d 791, 794 [138 Cal.Rptr. 369], was, in fact, premised upon this concept, even though we did not explicitly analyze it. It was similarly implicit in the brief discussion found in *Clemente* v. *State of California* (1985) 40 Cal.3d 202, 220-221 [219 Cal.Rptr. 445, 707 P.2d 818], for if that plaintiff's alien status had not been an appropriate area of inquiry, our Supreme Court would have had no occasion to express its disapproval of the means by which the defendant there sought to elicit information on the subject.

On the other hand, the court in *Clemente* made equally clear its awareness that evidence relating to citizenship and liability to deportation almost surely would be prejudicial to the party whose status was in question. It therefore concluded that when such evidence was so speculative or remote as to render it only marginally relevant, it was appropriate to exclude it completely from the jury's consideration.

We are convinced the competing concerns expressed in *Clemente* can best be reconciled by treating any question regarding a plaintiff's citizenship or lawful place of residence as one of law, to be decided exclusively by the trial court outside the presence of the jury. ■ Resolution of this question is, of course, prerequisite to any ruling upon the admissibility of evidence regarding future earnings.

Today we require our jurors to perform such intellectually Herculean feats as establishing what actions a truly reasonable man might have taken in a given situation, fixing the appropriate price to be paid for a described amount of subjective pain and anguish, weighing in comparative balance varying degrees, and even dissimilar types, of fault, etcetera, etcetera. Difficult as these labors may be, they nonetheless are of the rheostat variety in that any answer selected necessarily will fall within the applicable range and be capable of finding support in the evidence, i.e., a percentage of fault between none and total; damages in a sum between nothing and millions. However, one's citizenship is comparable only to an on-off switch; a person either is subject to deportation or he is not. If he has been injured through the fault of another, his recovery should not be raised or lowered based upon the probabilities that the law's commands actually will be carried out in any particular instance.

Therefore, whenever a plaintiff whose citizenship is challenged seeks to recover for loss of future earnings, his status in this country shall be decided by the trial court as a preliminary question of law. (See Evid. Code, § 310.) At the hearing conducted thereon, the defendant will have the initial burden of producing proof that the plaintiff is an alien who is subject to deportation. If this effort is successful, then the burden will shift to the plaintiff to demonstrate to the court's satisfaction that he has taken steps which will correct his deportable condition. A contrary rule, of course, would allow someone who is not lawfully available for future work in the United States to receive compensation to which he is not entitled. (See *Alonso* v. *State of California* (1975) 50 Cal.App.3d 242 [123 Cal.Rptr. 536].)

If the court's decision following this hearing is in the plaintiff's favor, then all evidence relating to his alienage shall be excluded and his projected earning capacity may be computed upon the basis of his past and projected future income in the United States. Should the defendant prevail, then evidence of the plaintiff's future earnings must be limited to those he could anticipate receiving in his country of lawful citizenship. Of course, in such an instance since the plaintiff's status ordinarily would not be relevant to a determination of liability, he would be entitled to a limiting instruction to that effect.

In the case at bar, despite his concession regarding his initial illegal entry and residence, respondent might yet have been able to meet his burden of proof had an appropriate preliminary factual hearing been conducted. He claimed he had been in this country for nearly 20 years and had been a hardworking person of high moral character throughout that period. He allegedly had paid income taxes and owned his own business until forced to close it following the subject accident. As a consequence, he might have succeeded in a proceeding for suspension of deportation (8 U.S.C. § 1254) or he might be entitled to amnesty in the event currently pending federal immigration legislation is enacted.

Unfortunately, such matters were not explored below since the trial court concluded appellant had the burden of demonstrating not only respondent's current illegal status but also the possibility and probability of his eventual deportation.[2]

In addition, the court allowed evidence to be introduced as to respondent's projected earnings here as well as in Mexico and then instructed a jury aided by only the most general and superficial information regarding

---

[2] The court instructed the jury, inter alia: "The defendant has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove the following issues: . . . (5) The possibility of plaintiff's deportation; and (6) The probability of plaintiff's deportation."

immigration law, as follows: "If you find that the plaintiff *is subject to deportation*, you *may* find that any future loss of earnings must be governed by those earnings he would be capable of earning in the country of his origin." (Italics added.)

On the record before us it is clear that respondent was, at least, "subject" to deportation. However, from the general verdict ultimately returned by the jury, we cannot determine whether it compensated him for his loss of future earnings and, if it did, whether its award was based upon the evidence of his earning capacity in this country or in Mexico. In either case, since the jury was improperly instructed the judgment must be reversed for further proceedings and possibly a new trial on the issue of damages.

We have reviewed defendant's remaining contentions, but do not consider it necessary to discuss them here. Should those which relate to the question of damages arise in the event of a retrial, we are certain the trial court will exercise its sound judgment and discretion in light of whatever theories the parties may have advanced at that time and the evidence they then have produced. To the degree defendant's claims touch on the issue of liability, we are convinced they do not involve error sufficient to justify a reversal of the jury's special findings that all of respondent's damages were proximately caused by the accident on October 23, 1979, and that plaintiff was not negligent.

Upon remand the court shall conduct a hearing that will afford plaintiff an opportunity to present proof regarding his legal status. If it determines that evidence relating to his alienage should have been totally excluded, it shall re-enter judgment without the necessity of a new trial since then the only potential prejudice would have been suffered by plaintiff and he has not appealed. Should it reach a contrary conclusion, the matter shall proceed to a new trial limited to the issue of damages.

The judgment is reversed and the cause remanded for further proceedings in accordance with this decision. Each party shall bear its own costs on appeal.

Compton, Acting P. J., and Beach, J., concurred.