177 P.3d 769 (2008)
Alex SALAS, a single person, Appellant/Cross-Respondent,
v.
HI-TECH ERECTORS, a Washington Corporation, Respondent/Cross-Appellant.
No. 58511-8-I.
Court of Appeals of Washington, Division 1.
February 25, 2008.
*770 Brian K. Boddy, Attorney at Law, Robert B. Kornfeld, Kornfeld Trudell Bowen & Lingenbrink PLL, Kirkland, for Appellant.
John Clifford Moore, Attorney at Law, Maple Valley, Robert Craig Levin, Mitchell Lang & Smith, Seattle, for Respondent.
BAKER, J.
¶ 1 Alex Salas was injured on a construction site. He appeals rulings by the trial judge admitting evidence of his immigration status and expert testimony by Hi-Tech Erector's principal, and the court's denial of a proposed jury instruction. Hi-Tech Erectors cross-appeal a pretrial limitation on its witnesses' testimony, and a grant of partial summary judgment in which the court held *771 as a matter of law that Hi-Tech Erectors violated a Washington Administrative Code provision governing safety standards for ladders. We affirm.

I
¶ 2 Alex Salas, an undocumented immigrant, was working on a condominium restoration project when he slipped from a scaffold ladder and fell three stories to the ground, suffering serious injuries.
¶ 3 Salas sued Hi-Tech Erectors (Hi-Tech), which supplied the scaffolding at the construction site, asserting that the company violated the Washington Administrative Code's safety standards for ladders on construction sites.
¶ 4 Salas moved for summary judgment. Arguing that Hi-Tech had not disclosed any expert witnesses it might call, he sought to bar Hi-Tech from producing any witnesses, and to exclude the company principal in particular from offering expert opinion testimony.
¶ 5 The court granted Salas partial summary judgment, holding" as a matter of law that Hi-Tech had violated former WAC 296-155-480(1) (2007), and denied summary judgment as to liability, proximate cause, and damages. He also ruled that Hi-Tech's principal, George Canney, could be called as a witness at trial, but that he could not testify as an expert or opinion witness.
¶ 6 Salas moved for an order in limine seeking, inter alia, to exclude any evidence that he is not a United States citizen. The court denied the motion.
¶ 7 It is undisputed that Salas was living in this state on an expired visa. However, evidence of his status as an illegal alien came to counsels' attention only shortly before the trial, and counsel had no adequate chance to brief or prepare to address the issue. Hi-Tech unsuccessfully requested a continuance, a request Salas opposed.
¶ 8 Prior to trial, the court discussed the issue of Salas's immigration status with counsel. The court stated that if Salas made a claim for impairment of future income, his status as a non-legal resident would be probative as to the extent of the future impairment. The court ruled that it would leave the decision whether or not to introduce evidence of Salas's immigration status to Salas himself, saying, "you can't have it both ways. It either stays out and there's no future income claim or it comes in and you may make it." "These are volatile times in terms of immigration, no doubt," the court noted. "It may be a difficult decision for him to decide which way to go."
¶ 9 On the last day of trial, the court again discussed the immigration issue with counsel, noting that it had been provided with a New York case holding that immigration status is a fact issue to be considered by the jury.[1] The court expressed its agreement with that opinion.
¶ 10 Ultimately, in addition to past wage loss, and past and future medical expenses, Salas requested future lost wages, and his immigration status became an issue at trial. Salas testified that he had entered the country on a valid visa, and had applied for citizenship. There was no evidence that Salas was likely to be deported.
¶ 11 At trial, the court ruled that a question posed by Salas opened the door to allow George Canney to give expert and opinion testimony.
¶ 12 The jury found Hi-Tech to be negligent, but that its negligence was not a proximate cause of Salas's injuries.
¶ 13 Salas moved for a new trial, arguing that introducing his immigration status and allowing George Canney to testify had the effect of "unfairly poisoning the jury in favor of" Hi-Tech. His motion was denied. Salas now appeals, and Hi-Tech cross-appeals.

II
Immigration Status
¶ 14 A trial court has broad discretion in balancing the probative value of evidence against the potentially harmful consequences that might result from its admission[2] *772 We review a trial court's decision on the admissibility of evidence, and its rulings on motions in limine for abuse of discretion.[3] Abuse of discretion occurs where the trial court's action is manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.[4]
¶ 15 Whether immigration status is properly admissible in a claim for future wage loss appears to be an issue of first impression in Washington. Neither party has provided this court with Washington case law on the matter.
¶ 16 Salas argues that his immigration status was not relevant to any issue in the trial, and its admission was improper and prejudicial. He relies principally on a single criminal case, State v. Avendano-Lopez,[5] to support his contention that any discussion of nationality or immigration status is inherently prejudicial. The Avendano-Lopez court held that questions of nationality and immigration status are irrelevant, appeal to a jury's passions and prejudices, and are generally improper and inadmissible in a court of justice.[6] Courts in other jurisdictions have uniformly condemned questions designed to appeal to national prejudice.[7]
¶ 17 Salas's reliance on Avendano-Lopez is misplaced. The court in Avendano-Lopez held that the question of immigration status was improper not only because it appealed to the jury's passions and prejudices, but because it was completely irrelevant to the material issues of the criminal case.[8] In civil cases, as discussed below, several courts have found immigration status to be relevant to a claim for lost future wages.
¶ 18 Salas also cites to Balbuena v. IDR Realty LLC.[9] That civil case, however, supports Hi-Tech's contention that immigration status may properly be placed before the jury. The Balbuena court addressed the question of whether an undocumented alien was precluded from obtaining lost wages because of the Immigration Reform and Control Act (IRCA).[10] The court held that any conflict with IRCA that may arise from allowing an alien's lost wage claim to proceed to trial can be alleviated by permitting a jury to consider immigration status as one factor in its determination of damages.[11] A jury's analysis of a future wage claim proffered by an undocumented alien is similar, the court held, to a claim asserted by any other injured person in that the determination must be based on all of the relevant facts and circumstances presented in the case.[12] The court hypothesized that an undocumented alien plaintiff could introduce proof that he had subsequently received or was in the process of obtaining the necessary documents and, consequently, would likely be authorized to obtain future employment in the United States. Conversely, a defendant could allege that a future wage award is not appropriate because work authorization has not been sought, or approval was sought but denied.[13]
¶ 19 Hi-Tech points to a number of foreign cases, including Balbuena, where courts have allowed the introduction of evidence that the plaintiff was an undocumented worker.
¶ 20 In Majlinger v. Cassino Contracting *773 Corp.,[14] the court held that a plaintiffs immigration status is relevant to a determination of damages for lost wages, and presents an issue of fact to be resolved by the jury.[15] The court held that a jury may take the plaintiffs status into account, along with the myriad other factors relevant to a calculation of lost earnings, in determining whether the plaintiff would have continued working in the United States throughout the relevant period, or whether his or her status would have resulted in deportation or voluntary departure from the United States.[16]
¶ 21 In. Barahona v. Trustees of Columbia University in the City of New York,[17] the court held that the plaintiff put his immigration status at issue when he sought damages for future lost earnings, and that the plaintiffs immigration status was thus a relevant fact for the jury to consider.[18] A jury's analysis of a future wage claim proffered by an undocumented alien, the court held, is similar to a claim asserted by any other injured person in that the determination must be based on all of the relevant facts and circumstances presented in the case.[19]
¶ 22 In another New York case, the court in Cano v. Mallory Management[20] held that the plaintiffs undocumented alien status may be presented to the jury on the issue of lost wages, but not on the issue of pain and suffering.[21]
¶ 23 Similarly, the New Hampshire Supreme Court has held that an illegal alien's status, though irrelevant to the issue of liability, is relevant on the issue of lost earnings.[22] Though evidence of a plaintiffs status may well be prejudicial, such evidence, the court held, is essential should an illegal alien wish to pursue a claim for lost earning capacity.[23]
¶ 24 While Hi-Tech cites numerous cases in which courts allowed evidence of illegal immigrant status, other courts have been more restrictive when allowing such evidence to be presented.
¶ 25 The court in Klapa v. O & Y Liberty Plaza Co.[24] held that whatever probative value illegal alien status may have is far outweighed by its prejudicial impact.[25] The court held that defendants must be prepared to demonstrate something more than the mere fact that the plaintiff resides in the United States illegally.[26]
¶ 26 A Michigan court held that the issue of the plaintiffs illegal alien status, while irrelevant on the question of liability, was material and relevant on the issue of determining the present value of plaintiffs future lost earnings, and remanded for a bifurcated trial to avoid prejudice.[27]
¶ 27 Citing the Michigan case, the Wisconsin Supreme Court affirmed a trial court's decision to exclude evidence of a plaintiffs illegal alien status in determining lost future earning capacity as unduly prejudicial.[28] Noting that no bifurcated trial had been sought, and that no offer of proof had been made by any defendant that deportation was anything other than a speculative or conjectural possibility, the court affirmed the trial *774 court's discretion in not allowing the "obvious prejudicial effect of the admission of such evidence."[29]
¶ 28 In the present case, the court was prepared to exclude all evidence of Salas's illegal alien status, provided he did not seek future lost earnings. Salas ultimately sought future lost wages, but made no attempt to mitigate any potential prejudice caused by evidence of his immigration status. He did not request a bifurcated trial to separate the issue of damages from negligence and liability. He further avers that it would have been pointless to request a curative jury instruction, as the court had already denied his motion in limine. He could have requested an instruction limiting consideration of his immigration status to the issue of future lost wages, but did not do so.
¶ 29 Salas asserts that the jurors were prejudiced against illegal immigrants, and his trial attorney has submitted a declaration to that effect.[30] However, voir dire was not recorded, leaving no record for this court to review. He declares that prejudiced jurors were seated after he used all of his peremptory challenges, but there is no indication that he sought to exclude potentially prejudiced jurors for cause.
¶ 30 Salas states that Hi-Tech's counsel immediately sought to inject the issue into the trial in his opening and on cross-examination. Neither opening nor closing arguments have been provided to this court, but the record shows that Salas's counsel discussed Salas's immigration status at length in his direct examination of Salas's brother and of Salas himself.
¶ 31 The issue of immigration status is divisive and prejudicial. We conclude that evidence of a party's illegal immigration status should generally be allowed only when the defendant is prepared to show relevant evidence that the plaintiff, because of that status, is unlikely to remain in this country throughout the period of claimed lost future income. Under the unique facts of this case, however, where the issue arose so late in the process and relevant authority was not provided to the court, we cannot conclude that the trial court abused its discretion in allowing evidence of Salas's immigration status.[31]
Expert Testimony
¶ 32 Salas argues that it was error for the court to allow George Canney to testify beyond the limits imposed on his testimony.
¶ 33 Salas initially sought to bar any witness testimony by Hi-Tech, arguing that such a limitation was justified by Hi-Tech's purported delay in responding to discovery requests.
¶ 34 In his motion to exclude all defense witnesses, Salas asserted that Hi-Tech had not disclosed any expert witnesses, nor any witnesses who might "wear two hats." In one of his interrogatories, Salas asked, "Are there any witnesses who have factual information regarding this case and who are also `expert witnesses'?" In its answers to interrogatories, Hi-Tech indicated it had not retained any expert witnesses, but did list George Canney as a witness with factual information as well as "expertise in erection of scaffolds and regulations pertaining thereto."
¶ 35 In its order granting partial summary judgment to Salas, the court decreed that "defense may only call its principal [George Canney] as a witness at trial, but he shall not be able to testify as an `opinion' or `expert' witness."
¶ 36 At trial, Salas's attorney asked Canney whether Salas would have been prevented from hitting the ground if he had been tied off with a safety harness. The court ruled that the question opened the door to allow Canney to offer expert witness and opinion testimony. The court's discussion with counsel on this matter is not in the record.
¶ 37 In his declaration in support of Salas's motion for a new trial, Salas's attorney asserted-that after he asked Canney the question, *775 the court asked to speak with both counsel in chambers where it informed Salas's counsel that he had opened the door to expert testimony.
¶ 38 In its opposition to the motion for a new trial, Hi-Tech disputed that account, stating that Salas's attorney asked the question after the court held a sidebar conference and warned Salas's counsel that if he asked that question he would be opening the door.
¶ 39 The record shows that after Salas's attorney asked Canney if Salas would have been prevented from falling if he had been tied off, defense counsel requested a sidebar. After the sidebar, the court asked defense counsel if he wanted to restate his question. Salas's counsel then introduced Canney's deposition, and read the same question aloud from the deposition. After some further questioning, the court again called counsel to a sidebar discussion.
¶ 40 This series of sidebar discussions comports more closely with Hi-Tech's account than it does with Salas's. In its order denying Salas's motion for a new trial, the court reiterated that it had informed counsel outside the presence of the jury that asking for Canney's opinion, as to whether any particular safety device would have prevented the accident called for an expert opinion, because Canney was not present at the time of the accident and had no personal knowledge as to how Salas fell from the ladder.
¶ 41 Absent an abuse of discretion, we will not disturb on appeal a trial court's rulings on motions in limine, or the admissibility and scope of expert testimony.[32] The trial court did not abuse its discretion in allowing Canney to testify beyond the initial limitations on his testimony.
Jury Instruction
¶ 42 Salas appeals the trial court's decision not to give his proposed jury instruction regarding Hi-Tech's duty to provide a safe workplace. Alleged errors of law pertaining to jury instructions are reviewed de novo.[33]
¶ 43 The instruction Salas proposed reads as follows:
A subcontractor like defendant Hi-Tech, owes a duty to every employee within the scope of its subcontract to ensure that it complies with all applicable safety regulations. The subcontractor is the party with innate supervisory authority and per se control over the scope of its subcontract, so it bears the primary, non-delegable duty to provide a safe workplace for workers. In Washington, subcontractors have a nondelegable duty to ensure compliance, within the scope of their subcontracts, with all Washington State construction safety regulations. This liability is justified because a subcontractor's supervisory authority is per se control over the workplace within the scope of its subcontract.
¶ 44 Salas cites to three cases to support his instruction. Those cases, however, do not support his assertion that Hi-Tech had a primary, non-delegable duty to provide a safe workplace, and to ensure compliance with all Washington State construction safety regulations.
¶ 45 The court in Stute v. P.B.M.C., Inc.[34] held that the general contractor should bear the primary responsibility for compliance with safety regulations because the general contractor's innate supervisory authority constitutes sufficient control over the workplace.[35]
¶ 46 Similarly, the court in Kamla v. Space Needle Corp.[36] held that "[b]ecause a general contractor is in the best position, financially and structurally, to ensure WISHA compliance or provide safety equipment to workers, we place the prime responsibility for safety of all workers . . . on the general contractor.'"[37] *776 This court, in Weinert v. Bronco National Company,[38] stated that, under Stute, a general contractor bears the general duty to enforce safety regulations, and held that a siding subcontractor's duty did not extend beyond the scope of its contract with the general contractor, extending only to employees engaged in siding work.[39]
¶ 47 Salas's proposed instruction was not an accurate reflection of the law. A trial court has considerable discretion in determining the number and content of jury instructions.[40] It is under no obligation to give misleading instructions, or instructions which are not supported by authority.[41] We affirm the trial court's decision not to give Salas's proposed jury instruction.
¶ 48 Because we affirm the trial court, we need not address Hi-Tech's cross-appeal.
¶ 49 AFFIRMED.
WE CONCUR: APPELWICK, and BECKER, J.
NOTES
[1] The record does not indicate, which New York case the court was referring to.
[2] Lockwood v. A C & S, Inc., 109 Wash.2d 235, 256, 744 P.2d 605 (1987).
[3] Stale v. Finch, 137 Wash.2d 792, 810, 975 P.2d 967 (1999).
[4] Olver v. Fowler, 161 Wash.2d 655, 663, 168 P.3d 348 (2007).
[5] 79 Wash.App. 706, 904 P.2d 324 (1995).
[6] Avendano-Lopez, 79 Wash.App. at 718-19, 904 P.2d 324.
[7] Avendano-Lopez, 79 Wash.App. at 719, 904 P.2d 324.
[8] Avendano-Lopez, 79 Wash.App. at 719-20, 904 P.2d 324.
[9] 6 N.Y.3d 338, 812 N.Y.S.2d 416, 845 N.E.2d 1246 (N.Y.2006).
[10] Balbuena, 6 N.Y.3d at 353-55, 812 N.Y.S.2d 416, 845 N.E.2d 1246.
[11] Balbuena, 6 N.Y.3d at 362, 812 N.Y.S.2d 416, 845 N.E.2d 1246.
[12] Balbuena, 6 N.Y.3d at 362, 812 N.Y.S.2d 416, 845 N.E.2d 1246.
[13] Balbuena, 6 N.Y.3d at 362, 812 N.Y.S.2d 416, 845 N.E.2d 1246.
[14] 25 A.D.3d 14, 802 N.Y.S.2d 56 (N.Y.App. 2005), aff'd by, Balbuena v. IDR Realty LLC, 6 N.Y.3d 338, 812 N.Y.S.2d 416, 845 N.E.2d 1246 (N.Y.2006).
[15] Majlinger, 802 N.Y.S.2d at 68.
[16] Majlinger, 802 N.Y.S.2d at 68-69.
[17] 11 Misc.3d 1035, 816 N.Y.S.2d 851 (N.Y.Misc. 2006).
[18] Barahona, 816 N.Y.S.2d at 853.
[19] Barahona, 816 N.Y.S.2d at 853 (quoting Balbuena, 6 N.Y.3d at 362, 812 N.Y.S.2d 416, 845 N.E.2d 1246).
[20] 195 Misc.2d 666, 760 N.Y.S.2d 816 (N.Y.Sup. 2003).
[21] Cano, 760 N.Y.S.2d at 818.
[22] Rosa v. Partners in Progress, Inc., 152 N.H. 6, 868 A.2d 994, 1002 (2005).
[23] Rosa, 868 A.2d at 1002.
[24] 168 Misc.2d 911, 645 N.Y.S.2d 281 (N.Y.Sup. 1996).
[25] Klapa, 645 N.Y.S.2d at 282.
[26] Klapa, 645 N.Y.S.2d at 282.
[27] Melendres v. Soaks, 105 Mich.App, 73, 306 N.W.2d 399, 402 (1981).
[28] Gonzalez v. Franklin, 137 Wis.2d 109, 403 N.W.2d 747, 759 (1987).
[29] Gonzalez, 403 N.W.2d at 760.
[30] The attorney's paralegal also submitted, a declaration alleging prejudice by jurors.
[31] We note also that the jury never reached the issue of damages.
[32] See Christensen v. Munsen, 123 Wash.2d 234, 241, 867 P.2d 626 (1994) (admissibility and scope of expert testimony); Gammon, 38 Wash. App. at 286, 686 P.2d 1102 (motions in limine).
[33] Caldwell v. Depot of Transp., 123 Wash.App. 693, 696, 96 P.3d 407 (2004).
[34] 114 Wash.2d 454, 788 P.2d 545 (1990).
[35] Stute, 114 Wash.2d at 464, 788 P.2d 545.
[36] 147 Wash.2d 114, 52 P.3d 472 (2002).
[37] Kamla, 147 Wash.2d at 124, 52 P.3d 472 (quoting Stute, 114 Wash.2d at 463, 788 P.2d 545).
[38] 58 Wash.App. 692, 795 P.2d 1167 (1990).
[39] Weinert, 58 Wash.App. at 697, 795 P.2d 1167.
[40] Havens v. C & D Plastics, Inc., 124 Wash.2d 158, 165, 876 P.2d 435 (1994).
[41] McCluskey v. Handorff-Sherman, 68 Wash. App. 96, 110, 841, P.2d 1300 (1992), aff'd, 125 Wash.2d 1, 882 P.2d 157 (1994).