**Luis SILVA, Plaintiff–Appellee,**

v.

**Maria WILCOX, Defendant–Appellant.**

**No. 08CA2717.**

Colorado Court of Appeals,
Div. V.

Nov. 25, 2009.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2009.

Gaiennie Law Office, LLC, Amy E. Gaiennie, Laurence Schneider, Denver, Colorado, for Plaintiff–Appellee.

Gregory R. Giometti & Associates, P.C., Gregory R. Giometti, Mark Honhart, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge GRAHAM.

Defendant, Maria Wilcox, appeals from a judgment in favor of plaintiff, Luis Silva, awarding him damages for personal injuries he sustained in an auto accident. Wilcox contends that the trial court erred in (1) barring the presentation of evidence regarding Silva's status as a legal resident of the United States, (2) refusing to reopen discovery, (3) giving a negligence per se jury instruction, (4) barring the presentation of evidence concerning Silva's use of automobile-injury financing and (5) denying Wilcox's motion for a new trial. We remand for further proceedings.

## I. Background

### A. Factual Background

This case arises from an automobile accident on a snow-packed city highway. Wilcox was traveling in the far left lane at the speed of traffic, thirty to thirty-five miles per hour, when she saw traffic begin to slow due to an earlier accident. She was braking when her car started to spin, colliding with a bus. At trial, Silva argued that Wilcox's collision with the bus caused the bus to swerve and strike his truck, injuring him. Wilcox argued that Silva was ahead of her and that the bus never collided with his truck.

The jury awarded Silva $80,444.50 in damages, which included his claims for economic and noneconomic damages. As part of Silva's economic damages, he requested compensation for lost future wages.

### B. Procedural Background

This case was tried twice. Before the first trial, but after completion of discovery, Silva filed his combined motions in limine seeking to preclude evidence at trial of his borrowed funds from Injury Management Funding (IMF) and his immigration status.

Wilcox argued that the IMF arrangement had not been disclosed and could lead to the discovery of admissible evidence. She also argued that Silva's immigration status was relevant to his claim for damages for lost future wages. She moved for additional discovery and a continuance of the trial date.

Three days prior to trial, the trial court denied Wilcox's request to extend discovery and to continue trial. On the morning of trial, the trial court granted in part Silva's combined motions in limine, barring presentation of evidence on the topics of funds borrowed from IMF and Silva's immigration status.

The parties also disagreed concerning whether the jury should receive an instruction on negligence per se. At the first trial, Silva tendered a jury instruction on the topic of negligence per se, based on section 42–4–1008, C.R.S.2009 (following too closely), section 42–4–1101, C.R.S.2009 (reasonable and prudent speed), and section 42–4–1402, C.R.S.2009 (careless driving). The court rejected the instruction on the ground that "there was no evidence supporting it." The court also explained, mistakenly, that a negligence per se instruction was only warranted if the defendant was charged with the underlying offense. The first trial resulted in a hung jury.

Before the second trial, Silva submitted a trial brief supporting his argument for the inclusion of a negligence per se instruction pursuant to sections 42–4–1008, 42–4–1101, and 42–4–1402. At the second trial, Silva once again tendered a negligence per se instruction, this time basing it on Denver Rev. Mun.Code 54.158, which provides:

It shall be unlawful for any person operating a vehicle anywhere in the city to drive:

(1) In an *unreasonable* and *imprudent manner*, without having regard to the actual and potential hazards then existing; or

(2) *So as* to lose control of the vehicle thereby endangering or colliding with any person, structure, thing, vehicle or other conveyance.

(Emphasis added.)

The court gave the new negligence per se instruction, explaining that "they're the same

instructions basically [the court] gave for the last trial other than the careless driving, negligence per se, instruction which for some reason wasn't included in the first case but certainly was pled in the Complaint." The court later explained, mistakenly, that a negligence per se instruction was not given in the first trial because Silva had not asked for one. When Wilcox's counsel argued that a negligence per se instruction had been submitted, the court stated that it did not remember the instruction, but reasoned that the instruction was supported by the evidence.

In the second trial, the jury found in favor of Silva and awarded him $75,444.50 in economic damages, which under the jury instructions included "loss of earnings or damage to his ability to earn money in the future" in addition to medical, hospital, and other expenses.

## II. Immigration Status

We first consider whether it was error to grant the motions in limine and exclude evidence of Silva's immigration status. Further proceedings are required to determine this issue.

In the combined motions in limine, Silva contended that, at the time of the accident, he "was driving with a valid driver's license from Mexico." He asserted that the only reason for introducing evidence of the driver's license was to create bias against him. Silva also asked to bar *any* evidence regarding his immigration status because such evidence would likewise create bias and because its probative value was greatly outweighed by its prejudicial effect.

The trial court summarily granted the request to bar evidence concerning the driver's license and Silva's immigration status, without taking evidence and without conducting any CRE 403 analysis.

■ In response to the combined motions in limine, Wilcox contended that evidence of Silva's immigration status was relevant to any claim for lost future wages, arguing that he would not be entitled to earn wages if he was in the United States illegally. Thus, the question was preserved for appeal. *See*

CRE 103(a)(2) ("Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal.").

She renews her argument here, asserting that Silva's status was relevant to a determination whether he could earn any future wages pursuant to the Immigration Reform and Control Act of 1986, 8 U.S.C. section 1324a (2008) (IRCA). She maintains that, at a minimum, she was entitled to an evidentiary hearing to determine Silva's immigration status .before the trial court determined its admissibility. We agree.

In support of her argument, Wilcox cites *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 122 S.Ct. 1275, 152 L.Ed.2d 271 (2002), which held that the IRCA foreclosed the NLRB from awarding back pay to an undocumented alien. The Court in *Hoffman* based its decision on the conflict between an award of back pay and the IRCA. *Hoffman*, 535 U.S. at 147, 122 S.Ct. 1275. The IRCA established an extensive system designed to deny employment to aliens who may not lawfully work in the United States. *Id.* The Court held that "awarding back pay to illegal aliens runs counter to policies underlying IRCA" and suggested that to hold otherwise would allow the NLRB to award back pay "for wages that could not lawfully have been earned, and for a job obtained in the first instance by a criminal fraud." *Id.* at 149, 122 S.Ct. 1275.

■ This appeal raises the novel issues whether inquiry into a litigant's immigration status is relevant for purposes of contesting that litigant's ability to recover lost future wages, and, assuming that the inquiry is relevant, whether such future wages can be recovered. Our review of relevant cases in other jurisdictions convinces us that the question of one's immigration status is almost always relevant for purposes of considering lost wages; however, there is no uniform resolution of whether an illegal alien should be banned from recovering lost wages. We conclude that where a claimant is seeking to recover lost future wages as damages, the inquiry into his right as an

immigrant to earn such wages is relevant; however, there must be a showing that the immigrant has violated the IRCA and that he is unlikely to remain in the country during the period for which wages are sought before he can be precluded from recovering such wages.

*Hoffman* recognized that it is a crime for an unauthorized alien to subvert the laws of the United States by securing employment through the use of falsified documents. *Id.* *Hoffman* would bar even the recovery of back pay where the unauthorized alien had presumably earned the wages if the alien was acting in violation of the immigration laws. It is not settled whether we should apply the principle of *Hoffman* to situations where an unauthorized alien has not yet earned wages but expects to do so in the future.

Courts in other jurisdictions have reached inconsistent results in considering whether the immigration status of a plaintiff should preclude an award of damages for lost wages under state law. One court applied *Hoffman* so as to provide an outright bar to the recovery of lost future wages. *See, e.g., Hernandez–Cortez v. Hernandez*, 2003 WL 22519678, at *6 (D.Kan. No. Civ.A.01–1241–JTM, Nov. 4, 2003) (unpublished order) (holding that *Hoffman* and the IRCA prevent an award for lost future wages where an unauthorized alien was injured in an automobile accident, noting that "while many illegal aliens do find employment in the United States, this argument does not overcome [the IRCA] and *Hoffman*"). Similarly, in a case that preceded *Hoffman*, *Rodriguez v. Kline*, 186 Cal. App.3d 1145, 232 Cal.Rptr. 157, 158 (1986), the court held that as a general rule illegal aliens may not recover lost United States earnings.

At least one court has refused to bar recovery of lost wages where an employer was aware that the employee was in the United States illegally when the employee was hired. *See Rosa v. Partners in Progress, Inc.*, 152 N.H. 6, 868 A.2d 994, 1000 (2005). *Rosa* recognized that "illegal aliens have rights of access to the courts and are eligible to sue therein to enforce contracts and redress civil wrongs." *Id.* at 997 (quoting *Mendoza v. Monmouth Recycling Corp.*, 288 N.J.Super.

240, 672 A.2d 221, 225 (App.Div.1996)). Although *Rosa* adopted the principle of *Rodriguez* that illegal aliens generally may not recover lost United States wages, it also held that "as a matter of public policy, a person responsible for an illegal alien's employment who knew or should have known of that illegal alien's status may not employ an illegal alien's potential for deportation as a bar to that illegal alien's recovery of lost United States earnings." *Id.* at 1001. Of course, the latter condition would have no application to a non-employer like Wilcox who is not asked to compensate Silva for a wage claim but is asked to pay for lost future earnings.

A Texas court concluded that *Hoffman* only applies to an undocumented alien worker's remedy for an employer's violation of national labor laws and does not prevent recovery by an undocumented alien of lost wages in a common law personal injury claim. *Tyson Foods, Inc. v. Guzman*, 116 S.W.3d 233, 244 (Tex.Civ.App.2003).

In *Veliz v. Rental Service Corp.*, 313 F.Supp.2d 1317, 1335–36 (M.D.Fla.2003), a federal district court disallowed an award of lost wages where the record showed that the laborer unlawfully obtained employment in violation of the IRCA by tendering false identification. Also, in *Villasenor v. Martinez*, 991 So.2d 433, 436–37 (Fla.Dist.Ct.App. 2008), the trial court denied in part an automobile passenger's motion in limine to exclude evidence of her status as an illegal alien when she sought to recover lost wages in a personal injury suit. The court concluded that the passenger's unauthorized status was relevant to her claim of lost future earnings, as it affected her ability to obtain lawful employment in the country. *Id.* at 437.

In *Balbuena v. IDR Realty LLC*, 6 N.Y.3d 338, 812 N.Y.S.2d 416, 845 N.E.2d 1246, 1260 (2006), the court reasoned that an unauthorized alien injured at work could sustain a claim for lost future wages when the defendants made no showing that the plaintiff presented false documentation in violation of the IRCA. *Balbuena* also reasoned that New York law was not preempted by federal immigration laws and that no state law prevented the recovery of damages by a worker who

had violated state labor laws. We are not asked to consider state labor law here.

*Salas v. Hi–Tech Erectors*, 143 Wash.App. 373, 177 P.3d 769, 774 (2008), *review granted*, 164 Wash.2d 1030, 197 P.3d 1184 (2008), held that an unauthorized immigrant's status was only relevant and admissible if the defendant could show that the immigrant was unlikely to remain in the country. The court did not require a showing that the IRCA had been violated, but nonetheless would bar recovery of lost future wages only if the defendant could establish that the plaintiff would not be in the United States to earn wages. *Id.*

In light of the IRCA's prohibition against illegal aliens earning wages, the relevance of immigration status appears to have at least threshold relevance, depending upon the means by which the alien secured employment and the extent to which such employment is in violation of the IRCA.

■■ Furthermore, evidence of wrongdoing which might prevent a plaintiff from recovering damages would add to the relevancy of the plaintiff's immigration status. Colorado has recognized that a wrongdoer should not profit from his own deliberate wrong. *Donahue v. Pub. Utils. Comm'n*, 145 Colo. 499, 507, 359 P.2d 1024, 1027–28 (1961). Also, evidence which is directly related to damages is generally admissible and obviously relevant. *Myers v. Beem*, 712 P.2d 1092, 1093 (Colo.App.1985). Thus, we conclude that Wilcox's evidence about Silva's immigration status could have been relevant to limit her liability to compensate Silva for lost future wages.

■ Whether such evidence would have been admissible is less certain. As most other jurisdictions considering the issue have held, one's immigration status may limit the ability to recover damages. We are persuaded by those cases holding that where a defendant can show that the plaintiff engaged in wrongdoing, a jury could determine that the plaintiff should not be permitted to recover wages earned as a result of such wrongdoing. To the extent that a defendant is able to establish that a plaintiff immigrant is not authorized to be in the United States and has secured employment by violating the law or

is in violation of the law in some other particular fashion related to such employment, so that the plaintiff is unlikely to remain in this country throughout the period of claimed lost future income, we hold that the jury should be provided that information in determining whether to award damages for lost future wages.

Thus, here, if Silva is not authorized to be in the United States and Wilcox could show that he violated the immigration laws or some similar regulation in securing employment, that information would be admissible, and the jury ought to be permitted to consider it in deliberating about a damage award. Our holding falls short of adopting an absolute bar to recovery of lost future wages by an unauthorized immigrant, but supports the notion that a claimant's breach of the law ought to be a consideration in the jury's decision whether to award such damages.

■ Here, we are unable to review the trial court's order in limine because it does not provide any basis for us to weigh the propriety of an inquiry into Silva's immigration status. The record reflects that Silva was driving with a Mexican driver's license. In light of the requirement that new residents obtain a Colorado driving license within thirty days of residence, *see* § 42–2–102(2), C.R.S.2009, it would have been reasonable to inquire whether Silva was in the country legally. Thus, Silva's immigration status was marginally relevant to the larger consideration of damages. Because the trial court's order provides no legal or factual basis for its ruling, and includes no CRE 403 analysis, it is not possible to determine whether the responses. to such an inquiry would have been admissible. Wilcox may have been able to establish that Silva was in violation of the IRCA. Under such circumstances, the information about his status would have been relevant to a determination of damages.

Accordingly, it is necessary to remand the case for further proceedings on the question of damages. On remand, the trial court is directed to conduct a hearing at which time the relevance of Silva's immigration status can be determined. If, on the one hand, Wilcox is unable to establish the necessary foundation to admissibility, the judgment of

damages shall stand affirmed. If, on the other hand, Wilcox is able to establish that Silva was in violation of the IRCA and unlikely to remain in this country throughout the period of claimed lost future wages, the judgment of damages shall be vacated and a new trial on damages only shall be conducted so that Wilcox can present evidence regarding why Silva is not entitled to lost future wages.

### III. Discovery of Immigration Status

We now turn to Wilcox's argument that the trial court erred when it failed to reopen discovery to allow her to investigate Silva's immigration status. We disagree.

Parties may discover "any unprivileged, relevant matter that 'relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party' if it is 'reasonably calculated to lead to the discovery of admissible evidence.'" *Leaffer v. Zarlengo,* 44 P.3d 1072, 1083 (Colo.2002) (quoting former version of C.R.C.P. 26(b)(1)).

We note that the trial court never prevented Wilcox from obtaining discovery regarding Silva's immigration status during the discovery period. To do so would have been improper. Rather, the trial court declined Wilcox's request to reopen discovery, a decision well within the court's discretion. *See People v. Jasper,* 17 P.3d 807, 812 (Colo. 2001).

### IV. Negligence Per Se Jury Instruction

Wilcox next argues that the trial court erred in tendering a jury instruction on the issue of negligence per se, asserting that the instruction (1) contradicted the "law of the case" doctrine, and (2) was erroneous as a matter of law. We disagree.

### A. Standard of Review

Trial courts have discretion to determine the form and style of jury instructions. *Williams v. Chrysler Ins. Co.,* 928 P.2d 1375, 1377 (Colo.App.1996). We will not overturn such a determination absent a showing of an abuse of that discretion. *Id.* A court's ruling on jury instructions is an abuse of discretion only when the ruling is manifestly arbitrary, unreasonable, or unfair. *Id.* (citing *Hock v. New York Life Ins. Co.,* 876 P.2d 1242, 1251 (Colo.1994)).

### B. Preservation of Issue for Appeal

Initially, Silva argues that Wilcox did not preserve her negligence per se instruction issue for review because she gave only a general objection and did not alert the trial court to her contentions that the instruction was improper based upon the evidence and that section 54.158(2) of the careless driving ordinance improperly created a standard of strict liability. We conclude that the issue whether the instruction properly states the law was preserved.

Trial objections to jury instructions must be specific enough to indicate how the subject instruction varies from a correct statement of the law. *I.M.A., Inc. v. Rocky Mountain Airways, Inc.,* 713 P.2d 882, 887 (Colo.1986). Specific objections are necessary to "enable trial judges to clarify or correct misleading or erroneous instructions before they are given to a jury, and thereby prevent costly retrials necessitated by obvious and prejudicial error." *Scheer v. Cromwell,* 158 Colo. 427, 429, 407 P.2d 344, 345 (1965). General objections that omit the grounds for error deprive the trial court of any meaningful opportunity to correct its error. *Blueflame Gas, Inc. v. Van Hoose,* 679 P.2d 579, 586–87 (Colo.1984).

Here, Wilcox's counsel objected to the instruction on the grounds that there was no evidence to support it and that the court had refused a similar instruction in the first trial based in part upon a parallel statute because there was no evidence to support it. Further, the parties continually disputed the propriety of a negligence per se instruction before the end of the second trial. We conclude that even though the objection was general, when taken in the context of the parties' continuing dispute and the trial court's consideration of both the statutes and the ordinance, the issue whether the instruction was a correct statement of the law and could be properly based upon the careless driving ordinance was preserved for appeal. We will therefore review the instruction in

light of the evidence. *See I.M.A.,* 713 P.2d at 893.

### C. The Law of the Case Doctrine

 Wilcox first argues that the trial court's issuance of the negligence per se instruction violated the "law of the case" doctrine. Under this doctrine, a trial court's prior relevant rulings made in the same case are generally to be followed, unless its application results in error or is no longer sound due to changed conditions. *City of Aurora v. Allen,* 885 P.2d 207, 212 (Colo.1994). This discretionary rule of practice is based primarily on considerations of judicial economy and finality. *In re Bass,* 142 P.3d 1259, 1263 (Colo.2006). However, the Colorado Supreme Court has never held that the doctrine prevents a trial court from clarifying, or even revisiting, its prior rulings. *Id.* In fact, the supreme court has previously explained that "[e]very ruling or order made in the progress of an on-going proceeding may be rescinded or modified during that proceeding upon proper grounds." *Id.* (quoting *Broyles v. Fort Lyon Canal Co.,* 695 P.2d 1136, 1144 (Colo.1985)).

In the instant case, the trial court rejected a negligence per se jury instruction based on section 42–4–1008 (following too closely), section 42–4–1101 (reasonable and prudent speed), and section 42–4–1402 (careless driving) during the first trial and before the second trial. During the second trial, the court gave Jury Instruction No. 7 based on Denver Rev. Mun.Code 54.158. Wilcox argues that subsection 1 of 54.158 cannot form the basis of the negligence per se instruction because its language is essentially the same as the careless driving statute, section 42–4–1402, and the court had previously rejected a negligence per se instruction based upon that statute. We disagree.

The law of the case doctrine is discretionary. The parties were involved in an ongoing dispute over the instruction. Silva submitted a trial brief supporting his proposed instructions before the second trial. Instruction No. 7 was based upon a separate ordinance which had not previously been considered by the court. The trial court's decision to give Instruction No. 7 did not violate the

law of the case doctrine, and the court did not abuse its discretion on those grounds.

### D. The Negligence Per Se Instruction

Wilcox argues that Denver Rev. Mun.Code 54.158–2 cannot form the basis of a negligence per se instruction as a matter of law. We disagree.

 To establish a common law negligence claim, the plaintiff must show that the defendant owed the plaintiff a legal duty to conform to a standard of care, the defendant breached that duty, the plaintiff suffered injury, and there is a causal relationship between the breach and the injury. *Scott v. Matlack, Inc.,* 39 P.3d 1160, 1166 (Colo.2002). Negligence per se occurs when the defendant violates a statute adopted for the public's safety and the violation proximately causes the plaintiff's injury. *Id.* To recover, the plaintiff must also show that the statute was intended to protect against the type of injury he suffered and that he is a member of the group of persons the statute was intended to protect. *Id.* If the statute applies to the defendant's actions, the statute conclusively establishes the defendant's standard of care, and violation of the statute is a breach of his duty. *Id.*

 In Colorado, "[t]he violation of a safety statute regulating the use of roadways is evidence of negligence." *Pyles–Knutzen v. Bd. of County Comm'rs,* 781 P.2d 164, 169 (Colo.App.1989) (citing *Reed v. Barlow,* 153 Colo. 451, 386 P.2d 979 (1963)). The safety statutes underlying negligence per se instructions often unequivocally require or prohibit certain behavior. *See, e.g., Reed,* 153 Colo. at 454–55, 386 P.2d at 981 (involving a statute prohibiting the use of soapbox race cars on public streets); *Bullock v. Wayne,* 623 F.Supp.2d 1247, 1252 (D.Colo.2009) (involving a statute that requires coming to a full stop at a stop sign). The instruction in *Pyles–Knutzen* is the exception. In *Pyles–Knutzen,* a division of this court concluded that a negligence per se instruction could be based on the forerunner to section 42–4–1402, the basis of Silva's rejected negligence per se jury instructions. *Pyles–Knutzen,* 781 P.2d at 169.

**136**

Colorado's careless driving statute prohibits driving in a careless and imprudent manner. § 42–4–1402. When a statute serves as the basis for a negligence per se instruction, its effect is to establish the defendant's standard of care. Where, as with section 42–4–1402, the statutory standard of care is a codification of common law negligence, the negligence per se instruction has no practical effect when given alongside a common law negligence instruction. The modern trend is to reject these duplicative instructions. *See* Restatement (Third) of Torts: Liability for Physical Harm § 14 cmt. e (2005) (explaining that courts generally reject negligence per se instructions when the underlying statute codifies common law); *see, e.g., Fishman v. Kotts*, 179 P.3d 232, 234 (Colo.App.2007) (finding no error when a court declined a negligence per se instruction based upon a similar ordinance); *Downing v. Lillibridge*, 39 Colo.App. 231, 566 P.2d 714 (1977) (finding no error in a trial court's decision not to issue a negligence per se instruction when the underlying statute required a finding of negligence to impose liability). When given together, this sort of negligence per se instruction adds nothing to the common law instruction. In order for the jury to find negligence per se, first it would have to find simple negligence.

We now turn to the negligence per se instruction given here. We interpret the ordinance upon which Instruction No. 7 is based just as we would any other statute. In interpreting statutes, we must construe each statutory provision in harmony with the overall statutory scheme. *Wilczynski v. People*, 891 P.2d 998, 1001 (Colo.1995). We must avoid statutory constructions that lead to absurd results. *People v. Swain*, 959 P.2d 426, 432 (Colo.1998). When reviewing municipal ordinances, we apply the same rules of construction used for interpreting statutes. *JJR 1, LLC v. Mt. Crested Butte*, 160 P.3d 365, 370 (Colo.App.2007).

It is our duty to reconcile the jury's answers to special verdicts, if it is at all possible, based upon the evidence and the instructions given. *Navarro v. Ditmore*, 819 P.2d 1098, 1099 (Colo.App.1991) (citing *Lonardo v. Litvak Meat Co.*, 676 P.2d 1229

(Colo.App.1983)). Further, if there is a view of the case that makes the jury's answers consistent, the answers must be resolved that way. *Id.*

Here, the tendered negligence per se instruction was based on Denver Rev. Mun.Code 54.158. Subsection 1 parallels the language in section 42–4–1402, prohibiting careless driving. The standard of conduct requires reasonable care. Subsection 2 prohibits driving "*[s]o as* to lose control of the vehicle." (Emphasis added.) This language implies that subsection 2, like subsection 1, requires that drivers exercise reasonable care. Like the statute in *Pyles–Knutzen*, section 54.158 codifies the common law standard of negligence.

Jury Instruction No. 7, after a recitation of section 54.158, states: "A violation of any of this Code constitutes negligence." When read in conjunction with the common law negligence instruction, the negligence per se instruction is consistent, albeit unnecessarily cumulative. In order for the jury to find that Wilcox violated section 54.158, it must have already found her negligent. Indeed, the jury completed a verdict form, specifically finding that Wilcox was negligent. Although the trial court could have omitted the negligence per se instruction, it did not err in giving the instruction. *Pyles–Knutzen*, 781 P.2d at 169.

## V. Relevance of Automobile–Injury Financing

Wilcox next argues that the trial court erred in denying her request to reopen discovery and in granting Silva's motion in limine barring her from presenting evidence of Silva's loans from IMF. We disagree.

"Discovery rulings, including rulings limiting discovery, are within the discretion of the trial court and will not be disturbed absent an abuse of that discretion." *Tallitsch v. Child Support Servs., Inc.*, 926 P.2d 143, 149 (Colo.App.1996). An abuse of discretion occurs only when the trial court's decision is manifestly arbitrary, unreasonable, or unfair. *Keybank v. Mascarenas*, 17 P.3d 209, 214–15 (Colo.App.2000).

C.R.C.P. 26(b)(1) permits parties to obtain "discovery regarding any unprivileged, relevant matter that 'relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party' if it is 'reasonably calculated to lead to the discovery of admissible evidence.'" *Leaffer,* 44 P.3d at 1083 (quoting former version of C.R.C.P. 26(b)(1)). Wilcox argues that the trial court abused its discretion by preventing her from obtaining discovery under Rule 26(b) and by preventing her from presenting to the jury evidence regarding IMF.

Wilcox claims that the details of Silva's relationship with IMF are relevant to whether Silva is a real party in interest, because, where a claim has been assigned, the assignee becomes the real party in interest with the right to maintain the action. *Edis v. Edis,* 742 P.2d 954, 955 (Colo.App.1987). However, nothing in the record suggests that Silva has assigned his claim to IMF, or that IMF is a real party in interest.

Wilcox contends that Silva should have disclosed fully "AIMS Funding," an entity that appears on a few of Silva's insurance claims forms. She does so despite the fact that the record contains the affidavit of the relevant doctor's supervisor of medical records, who states that the appearance of "AIMS Funding" and "AIMES [sic] Auto" on Silva's documentation was due to a system error. Wilcox does not attack the authenticity of the supervisor's affidavit.

Next, Wilcox argues that Silva's relationship with IMF is relevant to the calculation of damages, because Silva claims damages for unpaid medical bills and interest on unpaid medical bills. She claims that Silva's relationship with IMF, combined with his demand for damages, will result in double recovery. We disagree. Nothing in the record indicates that Silva has or will obtain a double recovery. Further, Silva did not pursue damages for interest on any loans from IMF at trial.

Wilcox contends that the agreement between Silva and IMF should be disclosed because it could qualify as an insurance agreement and would therefore need to be disclosed under Rule 26. There is no support for this claim in the record. There has been no suggestion that any agreement between Silva and IMF constitutes an agreement of insurance.

Finally, Wilcox argues that a relationship between IMF and Silva's medical providers could be a source of bias, which is always relevant. *Evans v. Colo. Permanente Med. Group, P.C.,* 902 P.2d 867, 874 (Colo.App. 1995), *aff'd in part and rev'd in part on other grounds,* 926 P.2d 1218 (Colo.1996). Wilcox states that Silva's counsel, IMF, and some of Silva's medical providers share the same street address. However, she does not suggest how such an arrangement is impermissible. Although Wilcox could have inquired about relationships between Silva's counsel and medical providers during discovery, her post-discovery speculations do not warrant additional discovery.

Further, she does not demonstrate how she was prejudiced by the discovery deadline. Wilcox had substantial time to conduct discovery in this case, and it is within the province of the trial court to enforce its own reasonable trial management deadlines. *See Jasper,* 17 P.3d at 812. The fact that she failed to investigate fully the relationships between Silva's treatment providers and their biases, if any, is the fault of neither the trial court nor Silva.

We are satisfied that the trial court did not abuse its discretion in disallowing additional time and discovery on this topic, because Wilcox has not established any basis for her speculation that Silva's relationship with IMF and his counsel is relevant to advance a legitimate claim or defense. Likewise, we find no support in the record for Wilcox's contention that Silva failed to fulfill his C.R.C.P. 26 disclosure obligations by failing to disclose his relationship with IMF. The court's decision to deny further discovery with regard to IMF and AIMS was well within its discretion.

In light of our disposition here, it is not necessary for us to reach Wilcox's remaining contentions.

## VI. Conclusion

The case is remanded for further proceedings which will allow an inquiry into Silva's

immigration and employment status. If, on the one hand, there is no showing that Silva's status was in violation of the immigration laws or an employment-related rule or regulation, the judgment of damages shall stand affirmed. If, on the other hand, Wilcox is able to establish that at all times pertinent, Silva was in Colorado illegally and his employment was contrary to law so that he was unlikely able to remain in this country during the period of lost future wages, she should be permitted to present that evidence at trial and to have the jury determine whether Silva is entitled to recover lost future wages. Thus, upon such showing, the judgment of damages should be reversed and a new trial on the question of damages ordered.

The case is remanded for further proceedings consistent with this opinion.

Judge GABRIEL concurs.

Judge CONNELLY dissents.

Judge CONNELLY dissenting.

I would not reach the merits of defendant's challenge to the pretrial order excluding evidence of plaintiff's immigration status. Because defendant failed to make any offer of proof regarding what the evidence would have shown, she cannot show its exclusion affected her substantial rights. *See* CRE 103(a). Rather than remand to make a belated record, I would affirm the judgment.

Difficult issues would be presented had it been shown plaintiff could not work legally in the United States. It could be argued that such status would bar recovery of future lost wages, that it should be considered on a case-by-case base by trial courts and juries, or that it should not limit tort recovery. *See* Jerry Joe Knauff, Jr., *Defending Against Suits Brought by Illegal Aliens*, 76 Def. Couns. J. 319 (2009); Wendy Andre, *Undocumented Immigrants and Their Personal Injury Actions: Keeping Immigration Policy out of Lost Wage Awards and Enforcing the Compensatory and Deterrent Functions of Tort Law*, 13 Roger Williams U.L.Rev. 530 (2008); Hugh Alexander Fuller, *Immigration, Compensation, and Preemption: The Proper Measure of Lost Future Earning Capacity Damages After Hoffman Plastic Compounds, Inc. v. NLRB*, 58 Baylor L.Rev. 985 (2006).

But we do not know from the record whether plaintiff was entitled to be present and work in the United States. As the majority notes, the trial court never precluded defendant from seeking pretrial discovery of plaintiff's immigration status. After discovery closed, plaintiff filed an in limine motion seeking (among other things) to preclude evidence of his having a Mexican driver's license and of his immigration status. Defendant's response agreed the license was irrelevant but argued that plaintiff's immigration status might be relevant to the lost future wages claim depending on whether he was legally entitled to work here. The court entered a written order granting plaintiff's motion on these points. Defendant never again pursued the issue and made no offer of proof.

In my view, defendant's appeal of this issue should be precluded by CRE 103(a)(2). Rule 103(a)(2) provides in pertinent part that "[e]rror may not be predicated upon a ruling which ... excludes evidence unless a substantial right of the party is affected, and ... the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." *Id.*

Offers of proof are required to "establish a basis in the record for appellate review of the trial court's ultimate ruling." *People v. Saiz*, 32 P.3d 441, 446–47 (Colo.2001) (citing *Lanari v. People*, 827 P.2d 495, 503 (Colo.1992)). An adequate record is necessary to decide if there was trial error and if it affected substantial rights. *See* 1 Kenneth S. Broun, *McCormick on Evidence* § 51, at 249 (6th ed.2006); 21 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5040, at 877–80 (3d ed.2005). Thus, in both criminal and civil cases, divisions of this court have declined to review the merits of rulings excluding evidence where it was never shown what the evidence would have been. *See, e.g., People v. Walden*, 224 P.3d 369, 377, 2009 WL 1798603, at *9 (Colo.App. No. 08CA0859, June 25, 2009); *People v. Washington*, 179 P.3d 153, 165–66 (Colo.App. 2007), *aff'd*, 186 P.3d 594 (Colo.2008); *Vu v.*

*Fouts,* 924 P.2d 1129, 1130–31 (Colo.App. 1996).

Here, because we do not know what the excluded evidence would have shown, we cannot determine whether it was error to exclude it or whether the exclusion affected defendant's substantial rights. I would not grant defendant a remand to create the record she bore the burden of creating in the first place.

A remand or even outright reversal might be warranted if the trial court prevented defendant from discovering or producing the necessary evidence of plaintiff's immigration status. Here, however, nothing prevented defendant from discovering or presenting that evidence. I recognize that in opposing plaintiff's in limine motion, defendant requested an evidentiary hearing on the issue. But by then the discovery deadline had expired and, as the majority holds, the trial court did not abuse its discretion in denying defendant's motion to extend discovery. Under these circumstances, therefore, defendant's request for an evidentiary hearing to explore facts she had not previously sought to explore was simply another means of extending the discovery period.

Accordingly, I would reject defendant's challenge as not having been adequately preserved, without reaching the merits of the immigration issue. Because I concur in the remainder of the majority opinion, I would affirm the judgment.