55 Cal.Rptr.3d 678 (2007)
148 Cal.App.4th 345
The PEOPLE, Plaintiff and Respondent,
v.
Raif Lee MATYE, Defendant and Appellant.
No. C050332.
Court of Appeal of California, Third District.
March 7, 2007.
*679 Sandra Uribe, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Senior Assistant Attorney General, Carlos A Martinez, Mathew Chan and Kelly E. Lebel, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]
SCOTLAND, P.J.
Defendant Raif Lee Matye was sentenced to state prison after a jury found him guilty of both the abuse and false imprisonment of a dependent adult (Pen. Code, § 368, subds.(b)(l) & (f)), as well as other related crimes. He appeals.
In the published part of this opinion, we reject his claim that the evidence is insufficient to establish the victim was a dependent adult. As we will explain, a "dependent adult" within the meaning of Penal Code section 368 is a person between the ages of 18 and 64, "who has physical or mental limitations which restrict his or her ability to carry out normal activities or to protect his or her rights." (Pen.Code, § 368, subd. (h).) The word "restrict" is not synonymous with "preclude." Therefore, it is not necessary to prove the person is incapable of carrying out normal activities or of protecting the person's rights; it is sufficient that the person's ability to do so is limited in some significant *680 way. So it was with the victim in this case.
In the unpublished parts of our opinion, we address defendant's other contentions.

FACTS
The victim was 60-year-old Jean Estill, who suffered a massive stroke in 1980. The stroke had some effect on her mental abilities and caused partial paralysis on the right side of her body. She also had weakness and lack of coordination in her right arm and right leg, and it was very difficult for her to walk without a leg brace and the use of a cane, walker, or handrails.
In January 2005, the 37-year-old defendant, who is Estill's son, was living with Estill in her trailer and was having a sexual affair with her 18-year-old granddaughter, Heather Rag] and, who had moved into the trailer. Estill did not approve of the relationship and told them she wanted them to move out.
After an argument during which Estill called Ragland a "bag whore," meaning a person involved in sex and drugs, defendant took Estill's cane, threw it into the hall, and began slapping Estill. Throughout the weekend, defendant repeatedly slapped her, hit her with an object, and struck her in the chest with his fist. At one point, he twisted her arm and threatened to break it. When Estill tried to leave her bedroom, defendant picked her up and threw her on the bed. He threatened to kill her several times and pulled the telephone out of the wall. The incident ended when Estill called out the window to a neighbor, and the police were summoned. Estill suffered numerous injuries that were still apparent almost two weeks later. Ragland testified at trial and, in all significant respects, confirmed Estill's testimony concerning the events.
Defendant admitted slapping Estill, although he claimed to have done so far fewer times than Estill and Ragland reported. He said he acted after Estill had slapped him numerous times, repeatedly hit him with her cane, and kicked at him. According to him, the injury to Estill's chest was self-inflicted when she hit herself with her cane, and the threats he uttered were a response to threats by Estill, which was a common occurrence. He claimed that he removed the telephone because it was not working and he was trying to fix it, and that he would not let Estill leave because he thought she would try to drive and, due to the weather and her emotional state, she would get in a wreck.

DISCUSSION

I
The Legislature has determined that crimes against elders and dependent adults are entitled to special consideration and protection. (Pen.Code, § 368, subd. (a); further section references are to the Penal Code unless otherwise specified.)[1]
Section 368, subdivision (b)(1) states: "Any person who knows or reasonably should know that a person is an elder or dependent adult and who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any elder or dependent adult to suffer, or inflicts thereon unjustifiable *681 physical pain or mental suffering, or having the care or custody of any elder or dependent adult, willfully causes or permits the person or health of the elder or dependent adult to be injured, or willfully causes or permits the elder or dependent adult to be placed in a situation in which his or her person or health is endangered, is punishable by imprisonment in a county jail not exceeding one year, or by a fine not to exceed six thousand dollars ($6,000), or by both that fine and imprisonment, or by imprisonment in the state prison for two, three, or four years."
Section 368, subdivision (f) states: "Any person who commits the false imprisonment of an elder or a dependent adult by the use of violence, menace, fraud, or deceit is punishable by imprisonment in the state prison for two, three, or four years."
Defendant claims his convictions for violating both crimes must be reversed because the evidence is insufficient to establish that Estill was a dependent adult within the meaning of section 368.
"As used in [section 368], `dependent adult' means any person who is between the ages of 18 and 64, who has physical or mental limitations which restrict his or her ability to carry out normal activities or to protect his or her rights, including, but not limited to, persons who have physical or developmental disabilities or whose physical or mental abilities have diminished because of age. `Dependent adult' includes any person between the ages of 18 and 64 who is admitted as an inpatient to a 24hour health facility, as defined in Sections 1250, 1250.2, and 1250.3 of the Health and Safety Code." (§ 368, subd. (h).)
"Restrict" is not synonymous with "preclude." A restriction is only a limitation or restraint. (Carter v. Seaboard Finance Co. (1949) 33 Cal.2d 564, 580, 203 P.2d 758.) Therefore, it is not necessary to prove that the person is incapable of carrying out normal activities or of protecting the person's rights; it is sufficient if the person's ability to do so is limited in some significant way.
Viewed in the light most favorable to the judgment (People v. Millwee (1998) 18 Cal.4th 96, 132, 74 Cal.Rptr.2d 418, 954 P.2d 990), the evidence is sufficient to support the finding that Estill was a dependent adult.
Walking, of course, is a normal activity. Estill testified she had to wear a leg brace and use a cane or walker for walking. If she tried to walk without a brace, her ankle twisted and turned and could break. If she had something to hold on to, she could walk without a brace or cane, although it was difficult. When she was in bed, she kept her cane nearby so she could use it to get out of bed. Her hallway was equipped with handrails to assist her movement.
Estill's doctor confirmed that the stroke Estill suffered in 1980 left her with partial paralysis in the right side of her body. She had significant weakness of her entire right arm and entire right leg. She could walk with difficulty and with a lot of limping, and most of the time she required a walker or cane.
Estill testified that the stroke also impaired her mental abilities. She could not speak or comprehend very well since the stroke, and she had problems with her memory. Indeed, during his testimony, defendant related a prior incident in which Estill could not find her car in a store parking lot and security personnel had to call defendant to come and get her. And defendant admitted he told the arresting officer that Estill is like a 10 year old.
The jury had the opportunity to personally observe Estill. As defense counsel said during argument: "Well, on the one hand we have Ms. Estill who came into this courtroom, and you had an opportunity *682 on more than one occasion to view that Ms. Estill, the Ms. Estill who was wheeled up here, who was helped out by two or three individuals, who took another five or ten minutes to get into the seat, the woman who was helped into that seat. [¶] You heard the expressiveness of how hard it was for her to get into that seat, how hard it was for her to get from just to the courtroom door to here and always with the aid of either a person  I think she had a walker  or some manipulation." The jury could also observe her ability to comprehend questions and to remember and formulate answers.
In his argument, defendant focuses upon things Estill said she can do. However, Estill's testimony was consistent with her report of comprehension and memory problems. She would answer a question but then, through other testimony, qualify the answer. For example, she said she had a driver's license and was able to drive. But she also said she had not driven since Mother's Day 2004. Defendant did the driving while he lived with her. Since defendant had been out of the house, Estill relied on paratransit or her daughter and son-in-law to drive her. Therefore, although Estill said she could drive, it appeared her physical limitations restricted her ability to the extent that she did not do so.
Defendant asserts that Estill herself said she did not depend on defendant. Estill was asked: "And you don't really depend on your son for anything, right?" She replied: "No, I don't, other than making my bed and doing the laundry and vacuuming." However, elsewhere she said defendant helped with the laundry, meals, and driving, and did her banking for her.
She testified: "I trusted him with my  with my whole being, my well-being. [¶] . . . [¶] . . . I trusted him with my life, implicitly. My life was in his hands." And defendant testified that he was caring for her.
In any event, the pertinent provisions of section 368 do not require that a defendant be in a caretaker relationship with the victim.[2]
In sum, the evidence showed that Estill was a dependent adult for purposes of section 368, subdivisions (b)(1) and (f) because she had physical and mental limitations that "restrict[ed]," i.e., limited in some significant way, "her ability to carry out normal activities or to protect . . . her rights." (§ 368, subd. (h).)

II-IV[**]

DISPOSITION
The judgment is modified to stay, pursuant to section 654, the service of the sentences on count three, criminal threats, and count four, damage to a telephone line. The upper term sentence on count one is vacated, and the matter is remanded to the trial court for further proceedings on that issue, consistent with part III of this opinion, ante. The trial court is further directed to correct errors in the abstract of judgment identified in part IV of this opinion, ante. In all other respects, the judgment is affirmed.
We concur: SIMS and NICHOLSON, JJ.
NOTES
[*] Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts II, III and IV.
[1] Section 368, subdivision (a) provides: "The Legislature finds and declares that crimes against elders and dependent adults are deserving of special, consideration and protection, not unlike the special protections provided for minor children, because elders and dependent adults may be confused, on various medications, mentally or physically impaired, or incompetent, and therefore less able to protect themselves, to understand or report criminal conduct, of to testify in court proceedings on their own behalf."
[2] Subdivision (e) of section 368 concerns certain actions of a "caretaker," which is defined as "any person who has the care, custody, or control of, or who stands in a position of trust with, an elder or a dependent adult." (§ 368, subds.(i).) Defendant was convicted of violating subdivisions (b)(1) and (f) of section 368, which apply to any person who commits the acts specified therein.
[**] See footnote *, ante.