Filed 3/9/15  Aguilar v. Yarra CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| PEDRO MURILLO AGUILAR,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>ROBERT W. YARRA et al.,<br><br>Defendants and Respondents. | F068547<br><br>(Super. Ct. No. 13CECG00632)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Kristi Culver Kapetan, Judge.

Gwire Law Offices, William Gwire; Carlson, Calladine & Peterson, Donald Carlson, and Ujvala Singh for Plaintiff and Appellant.

Bennett, Samuelsen, Reynolds, Allard, Cowperthwaite & Gelini and Mark P. Edson for Defendants and Respondents.

-ooOoo-

Plaintiff Pedro Murillo Aguilar (Client) sued his immigration attorney for legal malpractice, alleging his deportation was caused by the attorney's negligent failure to

apply for a U visa.[1]  The attorney filed a demurrer, arguing the claim was filed after the expiration of both the one-year and four-year limitations periods contained in Code of Civil Procedure section 340.6, subdivision (a) (section 340.6(a)).

The trial court determined Client discovered the facts essential to his claim, at a minimum, when he learned of and applied for a U visa by himself in March 2011.  It rejected Client's argument that he did not discover the wrongful nature of the attorney's omissions until he obtained the U visa.  Consequently, the court sustained the demurrer on the ground the malpractice action, filed in February 2013, was barred by the one-year statute of limitations that began to run when "plaintiff discover[ed], or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission."  (§ 340.6(a).)  Client appealed.

We conclude the facts appearing on the face of Client's complaint do not clearly and affirmatively show when Client discovered the facts indicating defendants' failure to apply for a U visa was a wrongful omission.  We reach this conclusion because the facts alleged do not show when Client learned the U visa program was available to him during the period that defendants represented him.  The failure to apply would not have been wrongful if the program did not exist during that period.  Therefore, the complaint does not establish a date of discovery that was more than one year before the lawsuit was filed.  As a result, whether the one-year limitations period bars this lawsuit cannot be determined at this stage of the proceedings.

As to the four-year limitations period, we conclude the question whether Client's deportation to Mexico and the terms of his deportation order caused him to be "under a legal or physical disability which restrict[ed his] ability to commence legal action"

---

[1]A U visa confers nonimmigrant status under certain circumstances on undocumented immigrants who have been the victim of criminal activity in the United States.  It appears the "U" designation is derived from paragraph (U) of section 1101(a)(15) of title 8 of the United States Code—the statutory provision setting forth the criteria for this nonimmigrant classification.  (See *Torres-Tristan v. Holder* (7th Cir. 2011) 656 F.3d 653, 656.)

(§ 340.6(a)(4)) is a question that cannot be resolved based on the facts alleged in Client's complaint. Accordingly, the four-year limitations period cannot be applied at this stage of the proceedings.

Consequently, this case is another example of a demurrer based on a statute of limitations defense that fails because of the difficulty of establishing, clearly and affirmatively, all of the facts necessary for that defense.

We therefore reverse the judgment of dismissal.

## FACTS

Client hired attorney Robert W. Yarra and his professional corporation (collectively, defendants) in April 2004 to represent him in immigration matters. Client's goal was to remain in the United States legally.

Client retained defendants because his application for cancellation of removal had been denied by an immigration judge in March 2004. The immigration judge determined Client had remained in the United States for the required length of time, was a man of good moral character, and his children were citizens of the United States. (See fn. 3, *post*.) The immigration judge denied the application because Client had not shown his children would suffer extremely unusual hardship if he were removed to Mexico.

Defendants challenged the denial of Client's application for cancellation by filing an appeal with the Board of Immigration Appeals. The appeal was denied.

Defendants then moved to reopen the removal proceedings and to remand the matter for new evidence regarding the reasons why Client's young daughter was suffering from anxiety and psychological problems. The daughter had recently revealed to her parents she had been sexually molested by her uncle and, subsequently, the daughter had been diagnosed with posttraumatic stress disorder. The motion to reopen based on this evidence was denied.

During the first half of 2006, defendants unsuccessfully sought relief from the United States Court of Appeals for the Ninth Circuit.

In November 2006, defendants applied for employment authorization for Client. This application was denied in February 2007, and defendants notified Client of the denial in April 2007.

On November 8, 2006, the United States Department of Homeland Security issued a notice that Client would be deported from the United States to Mexico. As a result of the deportation order, Client lost his job[2] and eventually was arrested and deported to Mexico. The exact date of Client's deportation is not contained in his pleadings. The deportation order stated Client was prohibited from returning to the United States for 10 years.

Facts relevant to Client's discovery of defendants' negligent omission relating to the U visa program are set forth in the following allegations in Client's second amended complaint:

> "19. Then, sometime in early 2011, [Client] learned about the U Visa, and believed he might be eligible for it based on the sexual abuse of his daughter. However, [Client] did not know whether he was eligible for the U Visa at that time. He would only know whether he was eligible for the U Visa whenever the US Government either granted or denied any petition he m[ight] file.
>
> "20. Therefore, despite the deportation order, fueled by the hope that he m[ight] be eligible for the U Visa, he once again entered the country, … making it back to his family in California.…
>
> "21. In about March, 2011, without the help of any attorneys, [Client] submitted an application for the U Visa, which was granted on February 29, 2012. This was when [Client] discovered Defendants' error in failing to advise him that the U Visa was an option available to him, and that he should apply for it. Before the U Visa was granted on February 29, 2012, [Client] did not know whether he was actually eligible for such relief. Therefore, he did not know until it was granted whether Defendants['] failure to advise him about it was an error on their part."

---

[2]Client's job as a janitor was steady, full time work that provided him annual compensation of approximately $30,000 as well as health and other benefits.

4.

Client's application for the U visa was based entirely on information relating to the sexual crime against his daughter, which information was learned by defendants before 2006.

Client did not know the U visa existed during the time defendants represented him. Defendants never told him about the U visa and never applied for one on his behalf. Client's pleadings did not allege when he first learned the U visa program was available to him during the time defendants represented him.

## PROCEDURAL HISTORY

Client filed his initial complaint for legal malpractice against defendants on February 27, 2013. The second amended complaint, which he filed in April 2013, is the operative pleading in this case.

In June 2013, defendants filed a demurrer to the second amended complaint, contending the malpractice claims were barred by the statute of limitations.

After the hearing on the demurrer, the trial court filed a minute order adopting its tentative ruling to sustain the demurrer without leave to amend. The trial court determined (1) Client knew of defendants' wrongful omission in March 2011 when he filed his own application for a U Visa and (2) that date was more than one year before the lawsuit was filed in February 2013. The court emphasized the distinction between the discovery *of the facts* constituting the wrongful omission, and the discovery that such omission *constituted professional negligence*. Consequently, the court concluded the malpractice action was time barred under the one-year statute of limitations in section 340.6(a).

In September 2013, the trial court filed a judgment of dismissal stating the second amended complaint was dismissed with prejudice.

In November 2013, Client filed a notice of appeal.

## DISCUSSION

### I. Legal Malpractice and the Statute of Limitations

#### A. Elements of Malpractice Claim

A cause of action for legal malpractice is complete when the following elements exist: "(1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence. [Citations.]" (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1199.)

A basic principle regarding the operation of statutes of limitation is that a limitation period does not run until the cause of action comes into existence. (See Code Civ. Proc., § 312 [civil action can be commenced only after cause of action has accrued].) In other words, a statute of limitations generally begins to run when the cause of action is complete with all of its elements. (*Aryeh v. Canon Business Solutions*, *Inc.* (2013) 55 Cal.4th 1185, 1191 ["last element" accrual rule].) Under this principle, a legal malpractice claim "will not run during the time the plaintiff cannot bring a cause of action for damages from professional negligence." (*Jordache Enterprises*, *Inc. v. Brobeck*, *Phleger & Harrison* (1998) 18 Cal.4th 739, 751 (*Jordache*).)

There are a handful of exceptions to the "last element" accrual rule. (*Aryeh v. Canon Business Solutions*, *Inc.*, *supra*, 55 Cal.4th at p. 1192.) The most important of these exceptions is the discovery rule, which postpones the accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action. (*Ibid.*) A delayed discovery rule for legal malpractice actions is contained in section 340.6(a).

#### B. Section 340.6

The Legislature has adopted a statute of limitations specifically applicable to attorney malpractice actions. Section 340.6(a) provides:

> "An action against an attorney for a wrongful act or omission, other
> than for actual fraud, arising in the performance of professional services

6.

shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. If the plaintiff is required to establish his or her factual innocence for an underlying criminal charge as an element of his or her claim, the action shall be commenced within two years after the plaintiff achieves postconviction exoneration in the form of a final judicial disposition of the criminal case. Except for a claim for which the plaintiff is required to establish his or her factual innocence, in no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist:

"(1) The plaintiff has not sustained actual injury.

"(2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred.

"(3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation.

"(4) The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action."

This appeal involves the application of the following statutory provisions. First, when did "the plaintiff discover[], or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission"? (§ 340.6(a).) Second, was the four-year limitations period tolled during Client's deportation to Mexico because he was "under a legal or physical disability which restrict[ed his] ability to commence legal action"? (§ 340.6(a)(4).)

## II. Demurrer Statute and Standard of Review

Code of Civil Procedure section 430.30, subdivision (a) provides that when "any ground for objection to a complaint … appears on the face thereof, … the objection on that ground may be taken by a demurrer to the pleading." The statute of limitations is a "ground for objection to a complaint" for purposes of this provision and, therefore, may be raised in a demurrer. (*Cochran v. Cochran* (1998) 65 Cal.App.4th 488, 493.)

7.

Generally, an order sustaining a demurrer on statute of limitations grounds is subject to de novo review on appeal. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42 (*Committee for Green Foothills*).)

It can be difficult to prevail on a demurrer asserting a statute of limitations defense for two reasons. First, the procedural rules of law applied at that stage of the litigation are favorable to the plaintiff, not the defendant. Second, the resolution of the statute of limitations issue usually involves questions of fact. (See *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 810 [issues involving a statute of limitations defense, such as delayed accrual under the discovery rule, normally are questions of fact].)

The procedural rules of law require trial and appellate courts to treat the demurrer as admitting the truth of all material facts alleged in the complaint as well as those facts that may be inferred reasonably from the expressly alleged facts. (*Marshall v. Gibson, Dunn & Crutcher* (1995) 37 Cal.App.4th 1397, 1403; see *Committee for Green Foothills*, *supra*, 48 Cal.4th at p. 42.) Furthermore, when the relevant facts are not clear such that the cause of action might be, but is not necessarily, time barred, the demurrer will be overruled. (*Committee for Green Foothills*, *supra*, at p. 42.) Thus, for a demurrer based on the statute of limitations to be sustained, the untimeliness of the lawsuit must clearly and affirmatively appear on the face of the complaint and matters judicially noticed. (*Ibid.*; *Marshall v. Gibson, Dunn & Crutcher*, *supra*, at p. 1403 [allegations in complaint showing claim might be barred are not enough].)

## III.    Overview of U Visa Program

Because the alleged malpractice involves the failure to apply for a U visa, we provide a brief overview of the federal statutes and regulations governing U visas and U nonimmigrant status.

The U nonimmigrant classification was created for certain victims of criminal activity by the Victims of Trafficking and Violence Protection Act of 2000 (Pub.L. No. 106-386 (Oct. 28, 2000) 114 Stat. 1464). (See *Lee v. Holder* (9th Cir. 2010) 599 F.3d 973, 974.) An undocumented immigrant is eligible for a U visa if the Secretary of

8.

the Department of Homeland Security determines that person has suffered "substantial physical or mental abuse" as a result of qualifying criminal activity and can show that person "has been helpful, is being helpful, or is likely to be helpful" to law enforcement authorities investigating or prosecuting the crime. (8 U.S.C. § 1101(a)(15)(U)(i); see 8 U.S.C. § 1184(p) [requirements applicable to § 1101(a)(15)(U) visas]; 8 C.F.R. § 214.14 (2015).)

Where the victim of the qualifying crime is a child, the parents may be eligible for U nonimmigrant status if certain criteria are met. Among other things, the parent must submit a certification from a law enforcement official confirming the parent's helpfulness in the investigation or prosecution of the crime. (8 U.S.C. § 1184(p)(1); see 8 C.F.R. § 214.14(c)(2)(i) (2015) [certification must be presented using Form I-918, Supplement B].)

When Congress enacted this legislation, it did not set a deadline by which the affected federal agencies had to promulgate regulations regarding U visas and the application process. (*Catholic Charities CYO v. Chertoff* (N.D.Cal. 2008) 622 F.Supp.2d 865, 872.) The agencies issued interim guidance to establish procedures to be followed until regulations were promulgated. (*Ibid*.) That guidance allowed undocumented immigrants who established prima facie eligibility for U nonimmigrant status to be placed in deferred action or granted stays of removal to ensure they were not removed from the United States before the agency could determine whether they were eligible for relief. (*Id*. at p. 873.) The guidance did not establish a formal application for U visas— that application was not created until the regulations were promulgated. (*Ibid*.)[3]

In September 2007, the Department of Homeland Security's proposed regulations were published in the Federal Register as an interim final rule. (See *New Classification*

---

[3]We note the statute refers to alien crime victims and, as a result, it was unclear before the regulations were issued whether the U Visa program would be extended to noncitizen parents of a child victim who was a United States citizen. (See *Catholic Charities CYO v. Chertoff*, *supra*, 622 F.Supp.2d at pp. 888-889.)

*for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status*, 72 Fed.Reg. 53014 (Sept. 17, 2007).)  The interim final rule designated Form I-918, "Petition for U Nonimmigrant Status," as the form to be used to request U nonimmigrant status.  (8 C.F.R. 214.14(c)(1) (2015); see 72 Fed.Reg. 53014, 53021 (Sept. 17, 2007).)

In the present case, the November 2006 deportation order was issued over ten months before the interim final rule was published.  Therefore, any application for U nonimmigrant status for Client before the deportation order was issued would have been submitted under the interim guidance.  (See *Catholic Charities CYO v. Chertoff*, *supra*, 622 F.Supp.2d at pp. 872-873.)

## IV. Application of One-Year Limitations Period

### A. Breach of Duty, Causation and Actual Injury

As background for our analysis of when "the plaintiff discover[ed], or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission" (§ 340.6(a)), we will identify when Client's cause of action was """complete with all of its elements.""" (*Aryeh v. Canon Business Solutions*, *Inc.*, *supra*, 55 Cal.4th at p. 1191.)

The four elements of the cause of action for legal malpractice existed when Client was deported pursuant to the November 2006 deportation order.

First, defendants owed Client a professional duty of care as a result of the attorney-client relationship from April 2004 until 2007.  Second, the alleged breach of that duty occurred when defendants failed to submit an application for U nonimmigrant status, or failed to advise Client of the program, before Client's deportation.  Third, Client suffered an actual injury when he lost his job and was separated from his family by the deportation.  Fourth, these actual injuries were caused by his deportation, which Client alleges was caused by defendants' failure to apply for U nonimmigrant status on his behalf or to advise him the program existed.

Thus, the facts alleged in the second amended complaint establish that the cause of action for legal malpractice was complete in all its elements before the end of 2007.  (See

10.

*In re Marriage of Klug* (2005) 130 Cal.App.4th 1389, 1400 [legal malpractice cause of action arises when attorney breaches the professional duty of care to client and causes damage].)

Therefore, a question presented in this appeal is whether the delayed discovery provision contained in section 340.6(a) postponed the start of the one-year statute of limitations.

### B.     Delayed Discovery—Waiting for Administrative Decision

Pursuant to section 340.6(a), the one-year limitations period does not begin to run until "the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission."

#### 1.     *Contentions of the Parties*

Client argues the trial court erred in setting the date of discovery of the facts constituting the wrongfulness of defendants' acts or omissions regarding the U visa as the date Client submitted his application for a U visa in March 2011.  In Client's view, that date "is not when [he] discovered the *wrongfulness* of his attorney's actions, but is only when he applied for a visa for which he thought he m[ight] have been eligible [citations]."

Defendants contend Client discovered the alleged failure to advise regarding the U visa program in 2011.  They argue this discovery started the one-year limitations period because the statutory text refers to "the facts constituting the wrongful act or omission" and not to the discovery that the known facts constitute professional negligence under applicable law.  (See *Worton v. Worton* (1991) 234 Cal.App.3d 1638, 1650.)  In other words, "[i]t is irrelevant that the plaintiff is ignorant of his legal remedy or the legal theories underlying his cause of action."  (*Gutierrez v. Mofid* (1985) 39 Cal.3d 892, 898.)

Client's reply brief argues:  "Until [Client] knew that he was eligible for the U Visa, he could not know whether [defendants'] failure to act was wrong.  If he were not eligible, then there would be no connection between [defendants'] failure to act and [Client's] deportation.  This connection is one of the necessary factors for this cause of

11.

action to accrue, because that is when [Client] discovered [defendants'] wrongdoing." Thus, Client contends his claim had "to be resolved in order for the client to know that the attorney erred." (*Jordache*, *supra*, 18 Cal.4th at p. 759.)

### 2. *Resolving a Claim to Learn of Attorney Error and Causation*

In *Jordache*, the Supreme Court addressed whether prior litigation in which the attorneys allegedly committed malpractice needed to be resolved before the statute of limitations would begin to run against those attorneys. (*Jordache*, *supra*, 18 Cal.4th at p. 747.) The court declined to recognize a general rule that a judicial determination of a claim or lawsuit handled by the allegedly negligent attorney was a necessary precursor to "actual injury" for purposes of section 340.6(a)(1). (*Jordache*, at p. 759.) The court, however, recognized a category of cases involving attorney advice in the form of a prediction "where the propriety of the attorney's advice or actions depended on the outcome of a claim by or against a client. [Citation.] In these circumstances, the claim may have to be resolved in order for the client to know that the attorney erred." (*Ibid*.)

The parties disagree about how this statement should be applied here and whether Client's application for a U visa had "to be resolved in order for the client to know that the attorney erred." (*Jordache*, *supra*, 18 Cal.4th at p. 759.) Therefore, we must determine whether Client's malpractice cause of action falls within the category of cases where the propriety of the attorney's advice depended on the determination of a claim. As discussed below, we conclude a decision on Client's application for a U visa was not necessary for Client to learn defendants had erred in handling his immigration matter.

In *Jordache*, the client was sued by another clothing company for marketing "knockoffs" of its apparel. (*Jordache*, *supra*, 18 Cal.4th at p. 744.) The law firm that initially represented Jordache in the unfair competition lawsuit did not offer any advice to Jordache about insurance coverage for the lawsuit. (*Ibid*.) When that law firm was replaced, "new counsel advised Jordache there was potential insurance coverage for that action." (*Id*. at p. 745.) Consequently, Jordache tendered its defense of the unfair competition lawsuit to its insurance company and, when the company denied coverage,

12.

Jordache sued the insurance company for a wrongful denial of coverage. (*Ibid*.) After Jordache settled the unfair competition lawsuit and subsequently settled the insurance coverage lawsuit, Jordache filed a legal malpractice claim against the law firm that initially represented it in the unfair competition lawsuit, alleging that firm failed to advise it to investigate whether insurance coverage might be available in the unfair competition lawsuit. (*Id*. at p. 746.)

The defendant law firm in *Jordache* moved for summary judgment, asserting section 340.6 barred the malpractice claim. (*Jordache*, *supra*, 18 Cal.4th at p. 746.) The trial court granted the motion and the Court of Appeal reversed, holding Jordache suffered no actual injury until it settled the lawsuit with its insurance company. (*Id*. at pp. 746-747.) The California Supreme Court reversed the Court of Appeal, concluding that court "erred in holding Jordache did not sustain actual injury before settlement of the insurance coverage litigation." (*Id*. at pp. 764-765.)

Although *Jordache* is an "actual injury" case and Client has argued there could be no connection between defendants' omission and his deportation until the U visa was issued, we conclude Client's malpractice cause of action does not fall within the category of cases mentioned in *Jordache* that might require a determination of the client's underlying claim to trigger the statute of limitations.

First, the type of attorney error alleged in this case is similar to the error alleged in *Jordache*. In *Jordache*, the client alleged the attorneys failed to assert a timely claim for liability insurance benefits or, alternatively, to advise the client about the insurance coverage. (*Jordache*, *supra*, 18 Cal.4th at p. 743.) Here, the alleged attorney error is the failure to apply for a U visa or advise Client about the U visa program. Thus, both errors involve the failure to apply for something beneficial to the client or, alternatively, to advise the client about the possibility benefits could be obtained.

Second, both *Jordache* and the present case involve the ordinary type of attorney malpractice action where the client already has suffered damages when the attorney's error is discovered. (*Jordache*, *supra*, 18 Cal.4th at p. 743.) Here, Client was aware of

13.

his injury (deportation and job loss) before he learned that defendants failed to apply for relief under the U visa program.

Third, the separate proceeding involved in this case—an administrative agency's processing of an application for a U visa—is similar to the separate proceeding in *Jordache*—the lawsuit between the client and its insurance company to determine if the client had insurance coverage for the unfair competition lawsuit. Both proceedings involved obtaining a benefit for the client from a third party.

The court in *Jordache* distinguished between malpractice claims that involve omissions, such as a failure to investigate insurance issues or render appropriate advice, from cases where the attorneys "negligently predicted a future adjudication's result or otherwise advised [the client] incorrectly." (*Jordache*, *supra*, 18 Cal.4th at p. 760.) It is the latter category of cases where the propriety of the attorney's advice or actions depends on the outcome of a claim by or against the client. (*Ibid*.) Client's malpractice claim does not fit into this category because it does not involve a prediction of a future result. Instead, like the malpractice alleged in *Jordache*, it involves "only omissions"— the failure to apply for, or advise Client about, the U visa program. (*Ibid*.) The court in *Jordache* made clear that omissions are not, in essence, a prediction about how a claim would be resolved. (*Ibid*.) Therefore, we cannot accept Client's position that his discovery of the wrong necessarily was postponed until the U visa was issued.

### C.    Delayed Discovery—General Analysis

Next, we consider the broader question of whether the facts alleged in the second amended complaint clearly and affirmatively allow us to find, as a matter of law, that Client "discover[ed], or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission" (§ 340.6(a)) more than one year before Client filed this malpractice action in February 2013.

Our first step is to identify "the facts constituting the wrongful … omission." (§ 340.6(a).) The wrongful omissions alleged by Client are defendants' failure to apply for a U visa on Client's behalf and their failure to advise him the U visa existed and

might have been a viable option for him. Thus, the facts constituting the omission and its wrongful nature are (1) the existence of the U visa program during the period that defendants represented Client, (2) his possible eligibility for U nonimmigrant status, and (3) defendants' failure to apply under the program or to advise him about the program.

Our second step is to determine if the second amended complaint establishes when Client discovered, or should have discovered, these facts. Client alleged he "learned about the U visa" sometime in early 2011. He further alleged that, without the help of any attorneys, he submitted an application for a U visa in March 2011 and that application was granted on February 29, 2012. Based on these allegations, Client would have learned of the specific criteria that an applicant must meet to establish eligibility for a U visa when he completed and submitted the application. Therefore, in March 2011, Client knew (1) the U visa existed, (2) he might be eligible for a U visa because he was able to present facts in response to the criteria contained in the application form, and (3) defendants had not applied for a U visa on his behalf or advised him about the program.

The information missing from the second amended complaint that would clearly and affirmatively establish when Client learned defendants' omission constituted a wrong relates to when Client learned the U visa program existed *during the period he was represented by defendants*. This information is relevant because defendants would have no duty to apply for a type of visa that does not exist. Thus, Client would not have known that defendants' failure to apply was wrong unless Client knew the program offered relief during the period defendants represented him (i.e., April 2004 until sometime in 2007). The mere fact Client learned he might qualify for a U visa does not necessarily mean he also learned enough about the history of the U visa program to know it existed while defendants represented him.

The significance of this missing information was the subject of a request for supplemental briefing. (See Gov. Code, § 68081.) Defendants responded by contending "Client can be charged with constructive knowledge of the fact that relief was available for aliens qualifying for U nonimmigrant status while defendants were representing him

as a reasonable investigation would have revealed this fact." We recognize that one—but not the only—reasonable inference from the allegations in the second amended complaint is that when Client learned the U visa program existed, he also learned U nonimmigrant status was available while defendants represented him. However, deciding whether this inference should be drawn amounts to deciding a question of fact. (*Fox v. Ethicon Endo-Surgery, Inc.*, *supra*, 35 Cal.4th at p. 810 [generally, whether plaintiff could have discovered factual basis for cause of action earlier by exercising reasonable diligence is question of fact].) Because Client's actual or constructive discovery that relief was available while defendants represented him does not clearly and affirmatively appear on the face of second amended complaint, we cannot conclude at the pleading stage of this lawsuit that the one-year statute of limitations bars Client's malpractice claim. (See *Committee for Green Foothills*, *supra*, 48 Cal.4th at p. 42.)

## V.     Four-Year Limitations Period and Tolling

The four-year limitations period in section 340.6(a) begins to run on "the date of the wrongful act or omission." Because defendants' omissions occurred during their representation of Client and that representation ended sometime in 2007, it follows that the four-year period would have expired before the start of 2012, well before the lawsuit was filed in February 2013. Thus, unless there is a basis for tolling the four-year limitations period, it will operate as a bar to the alleged negligence involving the U visa.

### A.     Legal or Physical Disability

#### 1.     *Contentions of the Parties*

Client contends his malpractice claim is not barred by the four-year statute of limitations because the four-year period was tolled during the time that he was "under a legal or physical disability which restricts the plaintiff's ability to commence legal action." (§ 340.6(a)(4).) Client contends his deportation and the terms of his deportation order created a legal or physical disability that restricted his ability to pursue a lawsuit in California.

16.

Defendants contend deportation to Mexico was not a physical or legal disability for purposes of the statute of limitations because none of the general statutory provisions concerning legal or physical disabilities that toll the statute of limitations indicate deportation or physical absence from California is such a disability.

### 2. *Statutory Interpretation*

The California Supreme Court has addressed the tolling provisions in section 340.6(a) and determined the Legislature expressly disallowed tolling under any circumstances not stated in the statute. (*Beal Bank*, *SSB v. Arter & Hadden*, *LLP* (2007) 42 Cal.4th 503, 512.) The court addressed the application of section 340.6(a)(2), which tolls the statute while "[t]he attorney continues to represent the plaintiff regarding the specific subject matter." The court concluded that when an attorney leaves a law firm and takes a client with him or her, the statute was not tolled as to the former law firm and its partners. (*Beal Bank*, *SSB*, at p. 505.) The court did not consider the scope of the tolling provision in section 340.6(a)(4) regarding "a legal or physical disability."

The scope of section 340.6(a)(4) was addressed in *Jocer Enterprises, Inc. v. Price* (2010) 183 Cal.App.4th 559. The court considered whether the tolling provision in Code of Civil Procedure section 351 for defendants who have left California applied in an attorney malpractice action subject to section 340.6(a). The court acknowledged that the Supreme Court disallowed tolling in any circumstances not enumerated in section 340.6 and concluded that the tolling provision applicable to legal or physical disabilities encompassed the circumstances set forth in Code of Civil Procedure sections 351. (*Jocer Enterprises, Inc. v. Price*, *supra*, at p. 569.) Here, defendants argue the court's conclusion should be extended such that the only disabilities encompassed by section 340.6(a)(4) are the specific disabilities addressed in the general tolling provisions such as Code of Civil Procedure sections 351 (a defendant's absence from California), 352 (an underage or insane plaintiff), 352.1 (an imprisoned plaintiff), 354 (disability to commence action by reason of the existence of a state of war), 356 (an injunction against filing action), and 366.1 (limited tolling upon death of a potential plaintiff). Because

17.

deportation is not addressed by these statutes, defendants contend deportation is not a "disability."

The phrase "a legal or physical disability" appearing in section 340.6(a)(4) is not defined by the statute. Also, no decision published by a California court has addressed whether a deportation order creates a disability.[4] Since section 340.6(a)(4) provides no definition of "legal or physical disability," we must resort to imprecise indicators of legislative intent. Ideally, the Legislature would address this issue directly by defining "legal or physical disability."

Courts usually construe statutes by affording the words their ordinary and usual meaning. (*People v. Cornett* (2012) 53 Cal.4th 1261, 1265.) In addition, courts appropriately refer to the dictionary definition of a word to ascertain its ordinary and usual meaning. (*Id*. at p. 1266.) Therefore, in the absence of legislative guidance or precedent, we will refer to the dictionary definitions of the words used in the phrase "a legal or physical disability which restricts the plaintiff's ability to commence legal action." (§ 340.6(a)(4).)

"Disability" is defined to include a "lack of legal qualification to do a thing **:** legal incapacity, incompetence, or disqualification" and "a nonlegal disqualification, restriction, or discrimination." (Webster's 3d New Internat. Dict. (1986) p. 642, col. 3.) The verb "restrict" means "to set bounds or limits to **:** hold within bounds: as **a :** to check free activity, motion, progress, or departure of." (Webster's 3d New Internat. Dict., *supra*, p. 1937, col. 1.) The synonyms of "restrict" are hamper, diminish and limit. (*Ibid*.) One case interpreted "restrict" to mean a person's ability to do something "is limited in some significant way." (*People v. Matye* (2008) 158 Cal.App.4th 921, 925

---

[4]There is a case from New York that concerned the deportation of the aggrieved party from one country to another during World War II, but that case involved a statute that tolled the limitations period when the failure to pursue litigation resulted from hardship related to the war. (See *Gallewski v. H. Hentz & Co.* (1950) 301 N.Y. 164 [93 N.E.2d 620] [citizen of the Netherlands deported to concentration camp in Czechoslovakia].)

18.

[meaning of "restrict" in Pen. Code, § 368, subd. (h)—an elder abuse statute].)[5] "Commence" means to begin, start or originate. (Webster's 3d New Internat. Dict., *supra*, p. 456, col. 1.)

The ordinary meaning of the terms "disability," "restricts," and "commence" do not lend themselves to the bright-line rule advocated by Client—specifically, that a deportation order always tolls the statute of limitations. Similarly, these terms do not support defendants' view that a deportation order never creates a disability.

Here, the deportation order disqualified Client from doing certain things legally. For instance, he could not enter the United States legally. However, the deportation order did not explicitly prevent him from filing lawsuits in the courts of California. (Cf. *Estate of Caravas* (1952) 40 Cal.2d 33, 39 [decedent's mother, a resident and citizen of Greece, was subject to a "disability" for purposes of Code Civ. Proc., § 354 because the Trading With the Enemy Act prevented her from filing claim to son's property].) Whether the legal disqualifications contained in the deportation order limited in some significant way Client's ability to start the malpractice action is a question of fact. The resolution of that factual question will turn on the circumstances of a particular case.

Next, we consider whether the factual questions can be resolved one way or the other based on the allegations in the second amended complaint.

### 3. Application of Tolling Provision for Disabilities

Defendants cite *Rodriguez v. Kline* (1986) 186 Cal.App.3d 1145 and *Ayala v. Unemployment Ins. Appeals Bd.* (1976) 54 Cal.App.3d 676 to demonstrate that undocumented immigrants have pursued and prevailed in litigation filed in California

---

[5]We do not hold that *Matye*'s definition of "restrict" as used in Penal Code section 368 should be imported wholesale into section 340.6. Nor do we hold that every circumstance that significantly limits a person's ability to file a lawsuit necessarily constitutes a "legal or physical disability" under section 340.6(a)(4). We instead follow the Supreme Court's example by refusing to lightly assume the Legislature intends "broad, rule-swallowing exception[s] …, absent a strong textual basis for doing so." (*Beal Bank, SSB v. Arter & Hadden, LLP*, *supra*, 42 Cal.4th at p. 512.)

courts.[6]  Both of these cases were pursued by individuals who were living in California during the litigation.  They demonstrate that illegal residency does not bar a person from California's court system, but they do not address whether persons deported to another country and prohibited from reentering the United States are subject to a legal disqualification that limits in some significant way their ability to start a lawsuit.

Under the rules of law that apply when a statute of limitations defense is pursued in a demurrer, the untimeliness of Client's lawsuit must clearly and affirmatively appear on the face of the second amended complaint.  (See *Committee for Green Foothills*, *supra*, 48 Cal.4th at p. 42.)  We cannot conclusively determine from the second amended complaint that the legal disqualifications contained in the deportation order did not significantly limit Client's ability to commence this malpractice action.  Consequently, we cannot conclude at the pleading stage of this lawsuit that the legal or physical disability provision did not toll the statute of limitations.

Further proceedings will be needed to determine whether the four-year limitations period was tolled by Client's deportation and the restrictions contained in the deportation order.  Thus, the order sustaining the demurrer cannot be affirmed based on the four-year limitations period in section 340.6(a).

---

[6]In *Rodriguez*, a plaintiff injured in an automobile accident was awarded $99,000. (*Rodriguez v. Kline*, *supra*, 186 Cal.App.3d at p. 1147.)  The plaintiff conceded that his initial entry into the United States and his residency were illegal.  (*Id*. at p. 1149.)  The trial court allowed evidence as to the plaintiff's projected earnings here as well as in Mexico and instructed the jury that if it found he was subject to deportation, it could find that any future loss of earnings were the earnings he would be capable of earning in Mexico.  (*Id*. at pp. 1149-1150.)

In *Ayala*, a worker illegally residing in the United States without a work permit was laid-off because he was physically unable to work.  (*Ayala v. Unemployment Ins. Appeals Bd.*, *supra*, 54 Cal.App.3d at p. 678.)  He filed a claim for disability benefits, which was granted and then revoked on the ground his claim was invalid because of his undocumented status and lack of a work permit.  (*Ibid*.)  The court determined the worker was entitled to disability benefits because, among other things, part of his compensation had been paid into the program while he was working.  (*Id.* at p. 679.)

**B.      Willful Concealment**

Section 340.6(a)(3) provides for the tolling of the four-year limitations period where the attorney has willfully concealed facts constituting the wrongful act or omission.  We do not address whether Client should have been granted leave to amend so he could allege additional facts about concealment because we have determined the four-year limitations period might have been tolled under section 340.6(a)(4).

## DISPOSITION

The judgment of dismissal is reversed and the trial court is directed to vacate its order sustaining the demurrer and to enter a new order overruling the demurrer and directing defendants to answer the second amended complaint.

Client (plaintiff) shall recover his costs on appeal.

_____
PEÑA, J.

WE CONCUR:


_____
POOCHIGIAN, Acting P.J.


_____
DETJEN, J.

21.