Filed 6/14/23  P. v. Zavala CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | C095823 |
| Plaintiff and Respondent, | (Super. Ct. No. S20CRF0083) |
| v. | |
| EDGAR BRINGAS ZAVALA, | |
| Defendant and Appellant. | |

A jury found defendant Edgar Bringas Zavala guilty of two counts of inflicting corporal injury resulting in a traumatic condition upon a dating partner, and one count each of rape, false imprisonment, and making criminal threats.  The jury also found true allegations that he used a deadly weapon in making those threats.  On appeal, defendant contends the trial court abused its discretion by excluding evidence that the victim gave a false name on a job application because the evidence would have injected the issue of the victim's immigration status into the case.  Defendant also contends the trial court's ruling violated his Sixth Amendment right of confrontation.  The People contend defendant

1

forfeited his constitutional claim by failing to raise it in the trial court and, in any event, the trial court did not prejudicially err by excluding evidence of the victim giving a false name. We conclude the trial court did not abuse its discretion or violate defendant's constitutional right. We will affirm.

## I. BACKGROUND

### A.     *Direct Examination of Jane Doe*

Jane Doe met defendant while they worked at a Pizza Hut together. They eventually began dating, after which defendant became increasingly aggressive about checking Doe's phone and preventing her from having contact with other men. Once, when Doe would not let defendant check her phone, he pulled Doe's hair hard enough to rip some out of her scalp. Another time, he pushed her and insulted her.

Defendant and Doe had been dating for about two months when they made plans to spend some time together at defendant's mother's house while his mother was out of town for a week. Doe lived with her cousin and his wife, Jackie, at the time, who would not have allowed her to stay with defendant alone, so she lied and told them she was travelling with defendant and his mother to meet his family in Modesto. Doe admitted using methamphetamine while staying with defendant so that they would have a good time. At first, Doe testified she had never used methamphetamine, but later admitted she had used methamphetamine once before.

While Doe was staying with defendant, he used her phone to access her Facebook account and discovered that she had sent a "friend request" to a man. Defendant became angry, began questioning Doe about the man, and then began yelling at her because he thought she was interested in the man. This began a series of escalating abuse over several days. Doe described defendant slapping her, strangling her with his hands, cutting her with scissors, threatening to cut her hair, pushing her, kicking her, spitting in her face, and threatening to make her disappear. Doe explained: "I didn't know what else could happen. Every time I thought we had reached a limit, but then things would

get worse." At one point she started to leave, but defendant convinced her to come back inside to calm down.

Later, defendant grabbed a knife, ordered Doe to take her pants off, and, when she refused, told her to take the knife and kill herself. Doe threw the knife away, and defendant ordered her into the bedroom. In the bedroom, defendant lay on top of Doe, holding her down, cut her blouse with scissors, took her pants off, and started to penetrate her vagina with his penis. When Doe later tried to lock defendant out of the bedroom, he threatened her with a large kitchen knife, pressing it to her throat and telling her to say her last words.

Eventually, defendant let Doe shower. Defendant had sex with Doe again, and Doe let him because she was scared and wanted him to stay calm and let her go to work. Defendant then drove Doe to work, at which point she called Jackie, who came to pick her up. Doe told Jackie some of what had occurred and asked for a plane ticket to return to Mexico. Jackie told Doe she needed to tell the police, and eventually Jackie called the police.

B.      *Cross-Examination and Exclusion of Evidence*

When defendant's counsel asked Doe, "did you lie to your employer when you got your job?", the trial court asked the attorneys to approach for a bench conference. Defense counsel explained she did not intend to ask Doe whether she was in the country illegally. The trial court reasoned the next logical question would be "why," and suggested holding a hearing outside the presence of the jury to determine Doe's reason for lying on the job application. The court also indicated it intended to exclude evidence of the job application if Doe gave the false information because her immigration status did not permit her to work legally in the country.

The parties discussed the public policy of excluding evidence of witnesses' immigration status so that those working illegally are comfortable coming forward to report and testify about crimes, then the parties paused to look up the relevant statute.

3

The prosecutor then cited Evidence Code section 351.4.[1] After reviewing the statute, the trial court explained: "I think at the end of the day, looking at [section] 351.4, that the probative value of her giving a name that's different than her birth name is less than its prejudicial effect. [¶] I also think that it contravenes the statutory intent of [section] 351.4, as well as the constitutional provisions that relate to that, so I'm not going to allow you to go into it." Defense counsel and the court then further discussed the statutory language, before the court again recommended an in camera hearing, and the parties agreed. Nobody mentioned that section 351.4 had been repealed by its own terms 10 days earlier. (See § 351.4, former subd. (c); Stats. 2018, ch. 12, § 2.)

In camera, Doe testified that she gave a false name on her job application: "I came to this country on vacation, but then the pandemic came, and they closed the border, and I wasn't able to go back to Mexico, and I decided to work for a bit and make some money while I was here, take advantage of the opportunity." Doe then clarified that she visited the United States on a tourist visa, not a work visa.

Defense counsel emphasized that Doe did not give a false name because she needed to work to support herself or her family, suggesting the circumstances were beyond the scope of the public policy of excluding evidence of immigration status. The trial court disagreed, finding "the probative value is outweighed by the prejudicial effect" and excluded evidence Doe used a false name and a false social security number on the job application.

Cross-examination continued with defense counsel continuing to attack Doe's credibility. Doe admitted lying to defendant about wanting to marry him, after the trial court overruled the prosecution's objection to the line of questioning. Doe admitted that she stayed up all night with defendant after using methamphetamine and then called in

---

[1] Undesignated statutory references are to the Evidence Code.

4

sick to work the next day.  Defense counsel also delved extensively into inconsistencies between Doe's trial testimony and what she reported to the police investigator shortly after the incident.

## II.  DISCUSSION

*A.      Exclusion of Testimony About Job Application*

Defendant contends the trial court abused its discretion by prohibiting his counsel from questioning Doe about using a false name on a job application.  Specifically, defendant argues:  (1) the trial court erroneously relied on section 351.4, which had recently been repealed, and (2) the court erroneously excluded the evidence under section 352.  We disagree.

*1.      Section 351.4*

As the parties note on appeal, but did not mention in the trial court, section 351.4 was not in effect at the time of trial.  Defendant contends the trial court excluded evidence of Doe's job application "solely because it found the evidence was inadmissible under section 351.4," and this reliance on a repealed statute was reversible error.  Defendant misunderstands section 351.4 and misinterprets the trial court's reasoning.

The version of section 351.4 in effect until 10 days prior to the ruling at issue in this case provided:

"(a) In a criminal action, evidence of a person's immigration status shall not be disclosed in open court by a party or his or her attorney unless the judge presiding over the matter first determines that the evidence is admissible in an in camera hearing requested by the party seeking disclosure of the person's immigration status.

"(b) This section does not do any of the following:  [¶] (1) Apply to cases in which a person's immigration status is necessary to prove an element of an offense or an affirmative defense.  [¶] (2) Limit discovery in a criminal action.  [¶] (3) Prohibit a person or his or her attorney from voluntarily revealing his or her immigration status to the court.

5

"(c) This section shall remain in effect only until January 1, 2022, and as of that date is repealed." (Former § 351.4; see Stats. 2018, ch. 12, § 2.)

In essence, section 351.4 is a procedural statute requiring an in camera hearing to determine the admissibility of "evidence of a person's immigration status" that the person does not want to disclose. Section 351.4 only authorizes exclusion of evidence if no in camera hearing is held. The trial court held an in camera hearing in this case, so there was no basis to exclude evidence pursuant to section 351.4. Defendant misunderstands the statute when he suggests section 351.4 played a substantive role in the exclusion of evidence.

Defendant also misinterprets the trial court's ruling. Even before the parties identified and discussed section 351.4, the trial court had already explained that it would not permit defense counsel to question Doe about the job application if she gave false information because of her immigration status. After looking at section 351.4, the court repeatedly explained the basis of its ruling as its finding "that the probative value of her giving a name that's different than her birth name is less than its prejudicial effect." This finding relies on section 352 and has no basis in section 351.4.

In fact, even before the enactment of section 351.4, courts excluded evidence of immigration status to avoid undue prejudice. For example, in *Velasquez v. Centrome, Inc.* (2015) 233 Cal.App.4th 1191, the trial court found evidence of the plaintiff's immigration status " 'highly, highly prejudicial,' " (*id.* at p. 1201) but denied a motion in limine to exclude the evidence because an expert testified that immigration status could have had an impact on the hospital's decision whether to perform a lung transplant, a key issue in the case. (*Id.* at pp. 1197-1202, 1214-1215.) When the expert testified at trial, he clarified that the hospital's official policy prohibited consideration of immigration status, making the plaintiff's immigration status irrelevant. (*Id.* at pp. 1207-1208.) The plaintiff's counsel moved for a mistrial, but the trial court denied the motion because the jury had only heard about the plaintiff's immigration status during voir dire and no such

6

evidence had been adduced. (*Id.* at p. 1208.) The appellate court reversed the trial court's denial of the motion for a mistrial, reasoning: "cases both in California and in multiple other jurisdictions have recognized the strong danger of prejudice attendant with the disclosure of a party's status as an undocumented immigrant." (*Id.* at p. 1213; accord *Rodriguez v. Kline* (1986) 186 Cal.App.3d 1145, 1148 ["evidence relating to citizenship and liability to deportation almost surely would be prejudicial to the party whose status was in question"]; *Hernandez v. Paicius* (2003) 109 Cal.App.4th 452, 462, disapproved on another ground in *People v. Freeman* (2010) 47 Cal.4th 993, 1006, fn. 4. [reversing judgment and remanding for new trial with different judge where "the court recited a veritable litany condemning and impugning the character of undocumented immigrants, including plaintiff, who place a burden upon the taxpayers by obtaining educational, medical, housing, and other services"].)

The trial court's ruling recognized the potential danger of injecting Doe's immigration status into the case. Contrary to defendant's argument, this prejudicial effect was the primary basis for the exclusion of evidence regarding Doe's job application. The trial court added: "I also think that it contravenes the statutory intent of [section] 351.4, as well as the constitutional provisions that relate to that," which, in context, suggests the court carefully considered its ruling because both sections 351.4 and 352 create exceptions to the "Right to Truth-in-Evidence" in article I, section 28, subdivision (f)(2) of the California Constitution. (See Legis. Counsel's Dig., chaptered version of Sen. Bill No. 785 (2017-2018 Reg. Sess.), at <https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=201720180SB785> ["Because this bill may exclude from a criminal action information about a person's immigration status that would otherwise be admissible, it requires a $^2/_3$ vote of the Legislature"].)

While this concern for the statute's legislative purpose suggests the trial court was not aware of the repeal of section 351.4, the oversight is immaterial here. The hearing

mandated by section 351.4 was also authorized by section 402, and, indeed, the trial court suggested holding such a hearing before it even considered section 351.4. In these circumstances, when statutes in effect justified the trial court's actions and the court did not clearly rely on the repealed statute, we may not presume the trial court's consideration of a repealed statute formed the basis for its ruling. Rather, "[a] ruling by a trial court is presumed correct, and ambiguities are resolved in favor of affirmance." (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631.) Accordingly, we conclude the trial court did not abuse its discretion by relying on the repealed section 351.4.**2**

2.      *Section 352*

Instead, we interpret the trial court's ruling as excluding evidence of Doe's job application under section 352. Under section 352, "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." " '[T]he latitude section 352 allows for exclusion of impeachment evidence in individual cases is broad. The statute empowers courts to prevent criminal trials from degenerating into nitpicking wars of attrition over collateral credibility issues.' " (*People v. Ayala* (2000) 23 Cal.4th 225, 301.) "Because the court's discretion to admit or exclude impeachment evidence 'is as broad as necessary to deal with the great variety of factual situations in which the issue arises' [citation], a reviewing court ordinarily will uphold the trial court's

---

**2** We also note defendant would be unable to show prejudice, in any event, because the Legislature reenacted section 351.4 later that year in substantially identical form, except without the sunset provision in section 351.4, former subdivision (c). (Stats. 2022, ch. 168, § 2.) The reenactment took effect immediately as an urgency statute. (Stats. 2022, ch. 168, § 3.) This means, even were we to reverse defendant's conviction and remand for a new trial, the trial court would be required to consider section 351.4 on remand.

exercise of discretion." (*People v. Clark* (2011) 52 Cal.4th 856, 932.) A trial court does not abuse its discretion under section 352 unless it rules in an arbitrary, capricious, or patently absurd manner. (*People v. Johnson* (2019) 8 Cal.5th 475, 521.) Defendant has not met this high bar here.

As explained above, evidence of a person's immigration status creates significant danger of undue prejudice. We also consider immigration related conduct to be only weakly probative in a case involving domestic abuse. In *People v. Villa* (2020) 55 Cal.App.5th 1042 (*Villa*), the defendant was charged with domestic violence and sought to introduce evidence the victim had applied for a U visa, which "would permit her to remain temporarily in the United States on the basis of her status as the victim of domestic violence who was assisting law enforcement with an investigation or prosecution of the offense." (*Id.* at p. 1050; see *id.* at pp. 1045-1050; 8 U.S.C. § 1101(a)(15)(U); 8 C.F.R. § 214.14 (2022).) The trial court considered the evidence relevant "because it suggested a potential motive for Doe to fabricate or exaggerate her abuse." (*Villa, supra*, at p. 1048.) But, the trial court determined "its limited probative value was far outweighed by 'the tendency of that particular item to open up a massive inquiry requiring an undue consumption of court time and tending to confuse issues and invite jury speculation.' " (*Ibid.*)

The appellate court agreed the evidence of the victim's visa application had limited probative value, especially given the other corroborating evidence in the case. (*Villa, supra*, 55 Cal.App.5th at p. 1053.) The court also concluded the trial court's "concerns about admitting the evidence were well founded." (*Ibid.*) The evidence would have required additional testimony exploring the victim's immigration status and her knowledge of the U visa program, likely consuming an undue amount of time. (*Ibid.*) The attorneys would have had to educate the jury about the U visa program to determine whether it gave the victim a strong reason to lie about the abuse, likely confusing or misleading the jury. (*Ibid.*) Finally, even though the jury already knew the victim was an

9

undocumented immigrant, the U visa evidence still created some danger of undue prejudice because jurors may "not have wanted to convict [the defendant] if they thought doing so would be tantamount to granting [the victim] permanent status in the United States." (*Id.* at pp. 1053-1054.) The court concluded "the probative force of the evidence [the victim] submitted an application for such a visa is significantly outweighed by the risks of prejudice to the victim and of confusing the jury and taking up undue trial time to explain the potential for bias." (*Id.* at p. 1054.) Therefore, "the trial judge did not act arbitrarily or capriciously in deciding to exclude the evidence for those reasons." (*Ibid.*)

The evidence in this case of Doe's job application has even less probative value than the evidence in *Villa*. The visa in *Villa* could only be obtained if the victim was a domestic violence victim cooperating with the prosecution, giving a motive to lie specifically about the domestic violence. By contrast, Doe giving false information on a job application had no connection to her testimony about domestic violence. "While collateral matters are admissible for impeachment purposes, the collateral character of the evidence reduces its probative value and increases the possibility that it may prejudice or confuse the jury." (*People v. Lavergne* (1971) 4 Cal.3d 735, 742.) Doe's lying on a job application to circumvent federal law says little about her truthfulness in making criminal allegations.

Evidence of Doe's job application also carries a greater risk of undue prejudice than the evidence in *Villa*, where the jury already knew the victim was an undocumented immigrant. The *Villa* court still concluded evidence of the victim's application for a visa carried the risk of undue prejudice because of the risk jurors would be biased if they knew a guilty verdict would grant the victim residency. Here, the jury was not yet aware of Doe's immigration status, so allowing evidence of Doe's job application would introduce the entire "strong danger of prejudice attendant with the disclosure of a party's status as an undocumented immigrant." (*Velasquez, supra*, 233 Cal.App.4th at p. 1213.) Because the trial court in this case had more justification for excluding evidence of Doe's

10

job application than the trial court in *Villa* had for excluding evidence of the victim's U visa application, we echo the *Villa* court in concluding: "Certainly, in this case the trial judge did not act arbitrarily or capriciously in deciding to exclude the evidence for those reasons." (*Villa, supra*, 55 Cal.App.5th at p. 1054.)

B.      *Constitutional Right of Confrontation*

Defendant also contends that the trial court violated his Sixth Amendment right of confrontation by prohibiting cross-examination of Doe about her job application. Defendant did not raise this constitutional right in the trial court, so the People contend defendant has forfeited this argument. Defendant responds that no objection was required, citing *People v. Partida* (2005) 37 Cal.4th 428. *Partida* held that appellate courts may consider whether an objected-to evidentiary ruling had the legal consequence of violating a constitutional right, even if that constitutional right was not invoked in the trial court. (*Id.* at pp. 436-439.) But, a defendant may not assert a different theory for the admission of evidence than he asserted at trial. (*Id.* at p. 438.) Accordingly, we will address whether the trial court's exclusion of evidence regarding Doe's job application as more prejudicial than probative violated defendant's right of confrontation. We conclude it did not.

"Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (*Delaware v. Fensterer* (1985) 474 U.S. 15, 20.) "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 679.) This means " 'reliance on . . . section 352 to exclude evidence of marginal impeachment value . . . generally does not contravene a defendant's constitutional rights to confrontation and cross-examination.' " (*People v. Riccardi*

11

(2012) 54 Cal.4th 758, 809-810, disapproved on another ground in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.) "A trial court's limitation on cross-examination pertaining to the credibility of a witness does not violate the confrontation clause unless a reasonable jury might have received a significantly different impression of the witness's credibility had the excluded cross-examination been permitted." (*People v. Quartermain* (1997) 16 Cal.4th 600, 623-624.)

Here, Doe's testimony and defense counsel's cross-examination gave the jury reason to doubt Doe's credibility. She lied to her cousin and Jackie that she was traveling with defendant and his mother to meet his family in Modesto because they would not have allowed her to stay with defendant alone. She admittedly lied to defendant about wanting to marry him, and the trial court allowed that questioning over the prosecution's objection. Doe admitted she stayed up all night with defendant after using methamphetamine and then called in sick to work the next day. Defendant's counsel also delved extensively into inconsistencies between Doe's trial testimony and what she reported to the police investigator shortly after the incident. Even on direct examination, Doe testified inconsistently about her own bad acts, for instance stating she had never used methamphetamine but later admitting she had used methamphetamine once before.

Given this evidence impugning Doe's credibility, adding testimony about a false name and social security number on a job application, which we have already concluded had only marginal probative value, would not have given the jury a significantly different impression of her. Accordingly, we conclude the trial court did not violate defendant's right of confrontation.

## III.  DISPOSITION

The judgment is affirmed.

/S/

RENNER, J.

We concur:

/S/

HULL, Acting P. J.

/S/

KRAUSE, J.